Hector GARCIA, etc., Plaintiff-Appellant,

v.

Alton V. W. GLOOR et al., Defendants-Appellees.

No. 77-2358.

United States Court of Appeals, Fifth Circuit.

Jan. 4, 1980.

158

James A. Herrmann, Texas Rural Legal Aid, Inc., Harlingen, Tex., for plaintiff-appellant.

Ruben Rendon, San Francisco, Cal., for Mexican Amer. Legal Defense & Ed. Fund.

Joel G. Contreras, Vilma S. Martinez, San Francisco, Cal., William H. Ng, Washington, D. C., for Equal Employment Opportunity Commission.

O. C. Hamilton, Neil Norquest, McAllen, Tex., for defendants-appellees.

Jerry Nugent, Austin, Tex., for Lumberman's Association of Texas.

Before FAY, RUBIN and HATCHETT, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Invoking Title VII, the Equal Employment Opportunity Act, 42 U.S.C. § 2000e–2 [EEO Act], Hector Garcia, a native-born

American of Mexican descent, challenges as discriminatory his employer's rule that prohibits employees engaged in sales work from speaking Spanish on the job. We find that the "speak-only-English" rule, as it was applied by Mr. Garcia's employer, does not discriminate on the basis of national origin. We therefore affirm the district court's judgment that Mr. Garcia's discharge for violating the rule was not unlawful, and, because the group of employees Mr. Garcia sought to represent was not numerous enough to constitute a class, we also affirm its denial of class action certification.

## I.

Hector Garcia, who was twenty-four years of age at the time of trial, completed the first semester of the tenth grade in Texas public schools. He speaks both English and Spanish. His grandparents were immigrants from Mexico; he is native-born, but he has always spoken Spanish in his own household.

In 1975, he was employed as a salesman by Gloor Lumber and Supply, Inc., in Brownsville, Texas. His duties included stocking his department and keeping it in order, assisting other department salespersons and selling lumber, hardware and supplies. He had received compliments from management on his work and in May 1975 had received a bonus of $250. However, there also was evidence that Mr. Garcia was not a satisfactory employee, that management's compliments were bestowed as incentives to better performance when, on occasion, his work showed some improvement and that a bonus was awarded to all employees at year-end without regard to merit.

Gloor had a rule prohibiting employees from speaking Spanish on the job unless they were communicating with Spanish-speaking customers. The rule did not apply to conversation during work breaks or to employees who worked outside in the lumber yard.

Mr. Garcia testified that, because Spanish is his primary language, he found the English-only rule difficult to follow. He testified that on June 10, 1975 he was asked a question by another Mexican-American employee about an item requested by a customer and he responded in Spanish that the article was not available. Alton Gloor, an officer and stockholder of Gloor, overheard the conversation. Thereafter Mr. Garcia was discharged.

Mr. Gloor testified, and the district court found as a fact, that Mr. Garcia's discharge was for a combination of deficiencies—failure to keep his inventory current, failure to replenish the stock on display from stored merchandise, failure to keep his area clean and failure to respond to numerous reprimands—as well as for violation of the English-only rule. The court also found that the English-only policy was not strictly enforced but that Mr. Garcia had violated it "at every opportunity since the time of his hiring according to his own testimony."

In addition to offering this evidence to justify firing Mr. Garcia, Mr. Gloor testified that there were business reasons for the language policy: English-speaking customers objected to communications between employees that they could not understand; pamphlets and trade literature were in English and were not available in Spanish, so it was important for employees to be fluent in English apart from conversations with English-speaking customers; if employees who normally spoke Spanish off the job were required to speak English on the job at all times and not only when waiting on English-speaking customers, they would improve their English; and the rule would permit supervisors, who did not speak Spanish, better to oversee the work of subordinates. The district court found that these were valid business reasons and that they, rather than discrimination, were the motive for the rule.

An expert witness called by the plaintiff testified that the Spanish language is the most important aspect of ethnic identification for Mexican-Americans, and it is to them what skin color is to others. Consequently, Mr. Garcia contends, with support from the Equal Employment Opportunity

Commission [EEOC], that the rule violates the EEO Act and the Civil Rights Acts, 42 U.S.C. §§ 1981 and 1985(c).

Of the eight salesmen employed by Gloor in 1975, seven were Hispanic, a matter perhaps of business necessity because 75% of the population in that area is of Hispanic background, and many of Gloor's customers wish to be waited on by a salesman who speaks Spanish. Of its 39 employees, 31 were Hispanic, and a Hispanic sat on the Board of Directors. There is, therefore, no contention that Gloor discriminated against Hispanic-Americans in any other way.

The narrow issue is whether the English-only rule imposes a discriminatory condition of employment on Hispanic-Americans.

## II.

 Mr. Garcia properly complains that the court arrived at its denial of class certification by deciding that he had no case on the merits. The question of class certification is a procedural one, distinct from the merits of the action. *Huff v. N. D. Cass Co.*, 5 Cir. 1973, (en banc), 485 F.2d 710; *Miller v. Mackey International, Inc.*, 5 Cir. 1971, 452 F.2d 424, 427–28. *See also Satterwhite v. City of Greenville*, 5 Cir. 1978, (en banc), 578 F.2d 987, 993–94. Whether a class should be certified depends entirely on whether the proposal satisfies the requirements of Fed.R.Civ.P. 23. *See generally* 7 C. Wright & A. Miller, Federal Practice and Procedure: Civil §§ 1759–1770 (1972).

 Although the reason given by the trial judge for denying class certification was wrong, the result reached was correct. A prerequisite for a class action is that the class be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). "The raison d'etre of the class suit doctrine is necessity, which in turn depends upon the question of number." 3B Moore's Federal Practice ¶ 23.05, at 23–149 (2d ed. 1979). This depends on the facts of each case and no arbitrary rules have been established, 7 C. Wright and A. Miller, Federal Practice and Procedure: Civil, § 1762 (1972), nor indeed should be. The basic question is practicability of joinder, not number of interested persons per se. Practicability of joinder depends on size of the class, ease of identifying its members and determining their addresses, facility of making service on them if joined and their geographic dispersion. *See id.*; 3B Moore's Federal Practice ¶ 23.05 (2d ed. 1979).

 Only twenty-one persons, those Gloor employees who worked in the sales area, could possibly have been affected by the English-only rule. Their identity and addresses were readily ascertainable, and they all lived in a compact geographical area. The suggested class therefore failed to meet the elementary requirement that supports the whole theory of class actions— representation by one person of a group so numerous that joinder in one suit would be impracticable.

## III.

Although the trial judge concluded that Mr. Garcia was fired for a number of reasons, including speaking Spanish on the job, the judge made no finding concerning the substantiality of the language violation in contributing to the matrix of motive. Perhaps under the evidence he could not, once the omelet had been cooked, determine what each egg had contributed to it.

 Employer action does not violate Title VII merely because a reprobated reason plays some part in the employer's decision, *see Rogers v. Equal Employment Opportunity Commission*, D.C.Cir.1977, 179 U.S.App. D.C. 270, 551 F.2d 456; yet the forbidden taint need not be the sole basis for the action in order to condemn it. The record would support a finding that Mr. Garcia's use of Spanish was a significant factor and, therefore, rather than remand for a determination by the trial court, we will assume for present purposes that it was. We turn then to the issues that appear to both parties and the several amici to be at the core of the case.

 In an employee suit for discharge alleged to be EEO-wrongful, the burden is on the employee to establish a prima facie

case of discrimination. *See McDonnell Douglas Corp. v. Green,* 1973, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677. If the English-only rule is not discriminatory, Mr. Garcia's suit fails; if it is shown on its face to be reprobated, then we should next consider whether Gloor has a legal defense justifying the rule.

The EEO Act sought to assure equality of employment opportunity by making it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

■ In interpreting the statute [1] we start with its plain words without pausing to consider whether a statute differently framed would yield results more consonant with fairness and reason. *See* B. Cardozo, The Nature of the Judicial Process 88–89 (1921). The first consideration is the problem, not the answer. *See* Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum.L.Rev. 527, 529–30 (1947). The statute forbids discrimination in conditions of employment based on national origin. Neither the statute nor common understanding equates national origin with the language that one chooses to speak.[2] Moreover, Mr. Garcia's national origin is not Mexican; he is a citizen of the United States by birth.

Mr. Garcia and the EEOC both contend that the English-only rule is discriminatory under the statute and that it is not justified by business necessity. We consider each argument separately.

The contention that it is discriminatory to prohibit speaking a foreign language on the job turns on the thesis that, if an employee whose most familiar language is not English is denied the right to converse in that language, he is denied a privilege of employment enjoyed by employees most comfortable in English; this, necessarily, discriminates against him on the basis of national origin because national origin influences or determines his language preference. To state the proposition in those terms is virtually to expose its lack of soundness.

No authority cited to us gives a person a right to speak any particular language while at work. Unless imposed by statute, the rules of the workplace are made by collective bargaining or, in its absence, by the employer. An employer does not accord his employees a privilege of conversing in English. English, spoken well or badly, is the language of our Constitution, statutes, Congress, courts and the vast majority of our nation's people. Likewise, an employer's failure to forbid employees to speak English does not grant them a privilege. An employer's refusal to hire applicants who cannot speak English might be discriminatory if the jobs they seek can be performed without knowledge of that language, but the obverse is not correct: if the employer engages a bilingual person, that person is granted neither right nor privilege by the statute to use the language of his personal preference. Mr. Garcia was bilingual. Off the job, when he spoke one language or another, he exercised a preference. He was hired by Gloor precisely because he was bilingual, and, apart from the contested rule, his preference in language was restricted to some extent by the nature of his employment. On the job, in addressing English-speaking customers, he was obliged to use English; in serving Spanish-speaking

---

1. While the EEOC has considered in specific instances whether a policy prohibiting the speaking of Spanish in normal interoffice contacts discriminates on the basis of national origin, [1972] Empl.Prac.Guide (CCH) ¶ 6293; [1972] Empl.Prac.Guide (CCH) ¶ 6173, it has adopted neither a regulation stating a standard for testing such language rules nor any general policy, presumed to be derived from the statute, prohibiting them. We therefore approach the problem on the basis of the statute itself and the case law.

2. The statute's legislative history concerning the meaning of "national origin" is "quite meager." *See Espinoza v. Farah Mfg. Co.,* 1973, 414 U.S. 86, 88, 94 S.Ct. 334, 337, 38 L.Ed.2d 287, 291.

patrons, he was required to speak Spanish. The English-only rule went a step further and restricted his preference while he was on the job and not serving a customer.

■ Let us assume that, as contended by Mr. Garcia, there was no genuine business need for the rule and that its adoption by Gloor was arbitrary. The EEO Act does not prohibit all arbitrary employment practices. It does not forbid employers to hire only persons born under a certain sign of the Zodiac or persons having long hair or short hair or no hair at all.[3] It is directed only at specific impermissible bases of discrimination—race, color, religion, sex, or national origin.[4] National origin must not be confused with ethnic or sociocultural traits or an unrelated status, such as citizenship or alienage, *Espinoza v. Farah Manufacturing Co.,* 1973, 414 U.S. 86, 94 S.Ct. 334, 38 L.Ed.2d 287, or poverty, *Ybarra v. City of Los Altos Hills,* 9 Cir. 1974, 503 F.2d 250, 253, or with activities not connected with national origin, such as labor agitation, *Balderas v. La Casita Farms, Inc.,* 5 Cir. 1974, 500 F.2d 195, 198.

■ Save for religion, the discriminations on which the Act focuses its laser of prohibition are those beyond the victim's power to alter. *See Willingham v. Macon Telegraph Publishing Co.,* 5 Cir. 1975, (en banc), 507 F.2d 1084 (employer's grooming code that required different hair lengths for males and females held not to constitute sex discrimination).[5] No one can change his place of birth (national origin), the place of birth of his forebears (national origin), his race or fundamental sexual characteristics. As this Court said in *Willingham,* "Equal employment *opportunity* may be secured only when employers are barred from discriminating against employees on the basis of immutable characteristics, such as race and national origin. . . . But a hiring policy that distinguishes on some other ground, such as grooming codes or length of hair, is related more closely to the employer's choice of how to run his business than to equality of employment opportunity." 507 F.2d at 1091 (emphasis in original).[6]

■ The EEO Act thus does not support an interpretation that equates the language an employee prefers to use with his national origin. To a person who speaks only one tongue, language might well be an immutable characteristic like skin color, sex or place of birth. However, the language a person who is multi-lingual elects to speak at a particular time is by definition a matter of choice. No claim is made that Garcia and the other employees engaged in sales were unable to speak English. Indeed, it is conceded that all salesmen could do so and that this ability was an occupational qualification because of the requirement that they wait on customers who spoke only English or who used that language by choice.

---

3. *Cf. NLRB v. Knuth Brothers, Inc.,* 7 Cir. 1976, 537 F.2d 950, 954 (employer may discharge employee for no reason at all so long as the motivation is not violative of the National Labor Relations Act).

4. *See generally* Note, Developments in the Law—Employment Discrimination and Title VII of the Civil Rights Act of 1964, 84 Harv.L. Rev. 1109 (1971).

5. Courts also have found discrimination in situations in which, although the basis of discrimination was not strictly immutable, a fundamental right was thought to be involved. *Willingham v. Macon Telegraph Publishing Co.,* 507 F.2d at 1091. *See Phillips v. Martin Marietta Corp.,* 1971, 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613 (employment discrimination against women with pre-school age children); *Sprogis v. United Air Lines, Inc.,* 7 Cir. 1971, 444 F.2d 1194 *cert. denied,* 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (rule prohibiting female stewardesses but not male stewards from getting married found discriminatory). *Cf. General Electric Co. v. Gilbert,* 1976, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (exclusion of pregnancy from disability benefits plan held not to be sex discrimination).

6. Some taxonomies, while ostensibly based on mutable characteristics, may be merely disguised discrimination either in intent or effect. Thus, employing only persons who have a high school degree when the job can adequately be performed by persons of lesser education can be concealed discrimination against racial groups whose numbers include fewer high school graduates. *See Griggs v. Duke Power Co.,* 1971, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158.

The rule was confined to the workplace and work hours. It did not apply to conversations during breaks or other employee free-time. There is evidence that Gloor forbade speaking Spanish to discriminate in employment or that the effect of doing so was invidious to Hispanic-Americans. We do not consider rules that turn on the language used in an employee's home, the one he chooses to speak when not at work, or what was spoken by his parents or grandparents. This case concerns only a requirement that persons capable of speaking English do so while on duty.

That this rule prevents some employees, like Mr. Garcia, from exercising a preference to converse in Spanish does not convert it into discrimination based on national origin. Reduced to its simplest, the claim is "others like to speak English on the job and do so without penalty. Speaking Spanish is very important to me and is inherent in my ancestral national origin. Therefore, I should be permitted to speak it and the denial to me of that preference so important to my self-identity is statutorily forbidden." The argument thus reduces itself to a contention that the statute commands employers to permit employees to speak the tongue they prefer. We do not think the statute permits that interpretation, whether the preference be slight or strong or even one closely related to self-identity.

There is another foot to the statute and to the case before us, and, lest our opinion end while the parties wait for the other shoe to drop, we discuss briefly the second issue—the question of justification for the rule.

 The EEO Act permits discrimination in hiring and employment "where religion, sex, or national origin is a bona fide occupational qualification [BFOQ] reasonably necessary to the normal operation of that particular business or enterprise." 42 U.S.C. § 2000e–2(e)(1). A BFOQ thus validates an occupational qualification that discriminates purposively. *See Dothard v. Rawlinson,* 1977, 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786.

The trial judge, after concluding that the English-only rule was not discriminatory, also held that it was justified as a BFOQ. This conclusion rests on a misunderstanding of the statute. Because the issue has been both briefed and argued, and elucidation may be helpful to the EEOC and other litigants, we discuss it briefly.

 The BFOQ rule allows an employer deliberately to discriminate. The English-only rule was not deliberately discriminatory; neither patently nor in secret purpose did it select national origin as a qualification for employment. Therefore the rule could not be said either to have been adopted as a BFOQ or to be legitimated by the exception.

 When a practice does deliberately discriminate, it may be validated as a BFOQ. A BFOQ defense is based on business need but must be distinguished from the "business necessity" defense [BND] despite the semantic and evidentiary similarity of the BND. (Our use of acronyms is deliberate so that we will not be confused in our discussion by semantic similarity). The concepts of BFOQ and BND are related in the sense that each is founded on the functional necessities of business operation, but the BND applies to another situation: where an employer has utilized an employment test of some other requirement not patently discriminatory and the requirement has been demonstrated by the plaintiff to be discriminatory in effect, the employer may show in defense that the requirement is justified by business necessity. *See* 42 U.S.C. § 2000e–2(h); *Griggs v. Duke Power Co.,* 1971, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158. Both BFOQ and BND are defenses but a BFOQ is a warrant for affirmative, deliberate discrimination while a BND is a defense to the prima facie case made when an apparently neutral employment practice is shown to have discriminatory effect.[7]

---

7. *See also Board of Education v. Harris,* 1979, ——— U.S. ———, ——— n.4, 100 S.Ct. 363, 367, 62 L.Ed.2d 275, 281, (relation of "educational necessity" justification under Emergency School Aid

This case involves neither. Because the English-only rule does not seek to discriminate on the basis of national origin (i. e. it does not single out national origin for purposes of discrimination) and has not been shown to have a discriminatory impact on Hispanic persons, it is not necessary to decide whether the rule would have been warranted by either test.

Mr. Garcia and the EEOC would have us adopt a standard that the employer's business needs must be accomplished in the manner that appears to us to be the least restrictive. The statute does not give the judiciary such latitude in the absence of discrimination. If the action of an employer is based on a valid, nondiscriminatory motive, judges who have neither business experience nor the problem of meeting the employees' payroll do not have the power to preempt an employer's business judgment by imposing a solution that appears less restrictive. *See Furnco Construction Corp. v. Waters*, 1978, 438 U.S. 531, 98 S.Ct. 2943, 57 L.Ed.2d 957.

### IV.

Having reached this point, it is unnecessary for us to consider the claims asserted under 42 U.S.C. § 1981 and 42 U.S.C. § 1985(c). Section 1981, which originated in the Civil Rights Act of 1866, assures "all persons" the same rights "enjoyed by white citizens" in making and enforcing contracts and in exercising other described rights. "Section 1981 is a parallel remedy against discrimination which may derive its legal principles from Title VII." *Blum v. Gulf Oil Corp.*, 5 Cir. 1979, 597 F.2d 936, 938. *See Johnson v. Alexander*, 8 Cir. 1978, 572 F.2d 1219, 1223 and n.3, *cert. denied*, 439 U.S. 986, 99 S.Ct. 579, 58 L.Ed.2d 658. The facts here that preclude relief under Title VII also preclude a Section 1981 claim. *See Blum v. Gulf Oil Corp.*, 5 Cir. 1979, 597 F.2d 936, 938.[8]

Section 1985(c), which originated with the Civil Rights Act of 1871, gives a cause of action for damages to any person who is a victim of a conspiracy to deprive that person or a class of persons of equal protection of the laws or of equal privileges and immunities under the laws. Although the statute reaches purely private conspiracies, *Griffin v. Breckenridge*, 1971, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338, because Mr. Garcia's claim rests on a violation of Title VII he may not invoke Section 1985(c). *Great American Federal Savings & Loan Association v. Novotny*, 1979, —— U.S. ——, 99 S.Ct. 2345, 60 L.Ed.2d 957.[9] *Cf. Johnson v. Railway Express Agency, Inc.*, 1975, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (aggrieved employee not limited to Title VII but may also sue for employment discrimination under Section 1981).

### V.

Some of Mr. Garcia's evidence was excluded by the trial judge: the investigative reports and determinations of the EEOC and the transcript of proceedings

Act to "business necessity" defense under Title VII).

Neither BFOQ nor BND should be confused with defenses available when an employer is charged with discrimination against an individual on an impermissible basis. *See Board of Trustees of Keene State College v. Sweeney*, 1978, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216; *Furnco Construction Corp. v. Waters*, 1978, 438 U.S. 531, 98 S.Ct. 2943, 57 L.Ed.2d 957; *McDonnell Douglas Corp. v. Green*, 1973, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. In this case we have assumed that Mr. Garcia was fired primarily for his use of the English-only rule even though Gloor asserted legitimate, nondiscriminatory reasons for his discharge. *See id.*

**8.** We need not, therefore, now decide whether the provision in Section 1981 that "all persons" shall have those described rights and benefits accorded "white citizens" affords protection to those who are denied these rights because they are Hispanic-Americans. *See Manzanares v. Safeway Stores, Inc.*, 10 Cir. 1979, 593 F.2d 968; *cf. Guerra v. Manchester Terminal Corp.*, 5 Cir. 1974, 498 F.2d 641, 653–54 (Section 1981 applies to aliens).

**9.** We do not reach the question whether Section 1985(c) was intended to cover only racial bias. *See McLellan v. Mississippi Power & Light Co.*, 5 Cir. 1977, (en banc), 545 F.2d 919; Comment, A Construction of Section 1985(c) in Light of its Original Purpose, 46 U.Chi.L.Rev. 402 (1979).

concerning Mr. Garcia's unemployment compensation claim conducted by the Texas Employment Commissioner's (TEC) Appeals Tribunal. If the exclusion of these was error, it was harmless, for, after weighing the evidence actually admitted, neither would have added appreciable weight to the contention that the rule was discriminatory. Fed.R.Evid. 103(a).

Most of the battle about the additional evidence appears to have been fought on the question of whether they were or were not business records. The admissibility of such official documents under the Federal Rules of Evidence is not determined by business records rules standards but by Rule 803(8), which provides for the admission of reports of public agencies.

The district judge was, indeed, in error in refusing to admit the investigative report and determinations of the EEOC. *See Peters v. Jefferson Chemical Co.*, 5 Cir. 1975, 516 F.2d 447, 450; *Smith v. Universal Services, Inc.*, 5 Cir. 1972, 454 F.2d 154, 157–58. That error was, as we have said, harmless. The rule would permit the introduction of the transcript of the TEC proceedings, which was transcribed by the secretary of Mr. Garcia's lawyer, only if it were properly authenticated. Fed.R.Evid. 901. The court's rejection of the unauthenticated transcript of the TEC hearing as independent evidence was proper.

### VI.

Our opinion does not, of course, impress a judicial imprimatur on all employment rules that require an employee to use or forbid him from using a language spoken by him at home or by his forbears. We hold only that an employer's rule forbidding a bilingual employee to speak anything but English in public areas while on the job is not discrimination based on national origin. Even if we assume that the violation of the rule was a substantial factor leading to Mr. Garcia's discharge, we, therefore, affirm the district court's judgment that Mr. Garcia was neither discharged because of his national origin nor denied equal conditions of employment based on that factor; instead, he was discharged because, having the ability to comply with his employer's rule, he did not do so.

The judgment is AFFIRMED.

HATCHETT, Circuit Judge:

I concur in the result only.