**CHARTER AIR CENTER, INC.,**
**Plaintiff,**

v.

**FLORIDA PUBLIC SERVICE**
**COMMISSION, Defendant.**

No. TCA 79–0871.

United States District Court,
N. D. Florida,
Tallahassee Division.

Dec. 22, 1980.

Selig I. Goldin, Gainesville, Fla., for plaintiff.

Prentice P. Pruitt, Joseph A. McGlothlin, Paul Sexton, Florida Public Service Commission, Tallahassee, Fla., for defendant.

## FINAL SUMMARY JUDGMENT

HIGBY, District Judge.

This is one of those rare cases which presents a pure question of law. The relevant facts are few and stipulated. Charter Air Center, Inc., an air carrier, has challenged Florida's authority to regulate its activity. Florida claims the right to regulate Charter Air. It relies upon Chapter 330 of the Florida Statutes which regulates aircraft and pilots operating in the state.

Charter Air's claim to immunity from Florida's regulation rests on the preemption clause of the Federal Aviation Act of 1958,

as amended by the Airline Deregulation Act of 1978 [1] which provides:

> Except as provided in paragraph (2) of this subsection, no State or political subdivision thereof and no interstate agency or other political agency of two or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier having authority under title IV of this Act to provide interstate air transportation.

49 U.S.C. § 1305(a)(1).[2] Charter Air argues it is an "air carrier having authority under title IV of this Act" and therefore protected from Florida's regulation.

The claim of authority relies upon the exemption Charter Air has received from the Civil Aeronautics Board, pursuant to Title 49, United States Code, Section 1386(b)(4)[3] and Title 14, Code of Federal Regulations, Section 298.11, from all of the regulatory provisions of Title IV of the Act[4] except for certain reporting requirements, insurance requirements, and requirements relating to joint operations with non–exempt carriers. An exemption, says Charter Air, is a grant of authority. The narrow issue this lawsuit presents is: Does exemption from regulation by the Civil Aeronautics Board constitute a grant of authority from the Board? Statutory construction answers the question negatively.

■ Interpretation of a statute begins with its plain words. *Garcia v. Gloor*, 618 F.2d 264 (5th Cir. 1980). "The first consideration is the problem, not the answer." *Id.* at 268. "[H]aving authority under title IV of this Act to provide interstate air transportation" are the plain words to be interpreted. "Authority" is not defined in the statute. It therefore carries its "ordinary, contemporary, common meaning." *Perrin*

1. The Airline Deregulation Act of 1978, Public Law 95–504, substantially amended the Federal Aviation Act of 1958, Public Law 85–726. The Federal Aviation Act of 1958, as it has been amended through the years, and other regulations of aviation are codified at Title 49, United States Code, Sections 1301 through 1552. For convenience's sake statutory references will be to the Code.

2. P.L. 95–504, § 4.

3. P.L. 95–504, § 32.

4. 49 U.S.C. §§ 1371–1389.

*v. United States*, 444 U.S. 37 at 42, 100 S.Ct. 311 at 314, 62 L.Ed.2d 199 at 204 (1979). Authority means "freedom granted by one in authority: RIGHT." *Websters Third International Dictionary, Unabridged* (1976) at 146. *See, also, Black's Law Dictionary* (5th Ed. 1979) at 121. The essence of any authority created by Title IV is set out in the section's first sentence: "No air carrier shall engage in any air transportation unless there is in force a certificate issued by the Board [Civil Aeronautics Board] authorizing such air carrier to engage in such transportation." 49 U.S.C. § 1371(a). A blanket prohibition against engaging in air transportation is established. Authority, freedom, to engage in air transportation must be received from the Board.

■ Charter Air claims its exemption, under Title 49, United States Code, § 1386, from regulation constitutes authority. The words of Section 1386 do not support that argument. It exempts a class of air carriers, which Charter Air belongs to, "from the requirements of subsection (a) of section 1371 ...." 49 U.S.C. § 1386(b)(4).[5] Thus the prohibition against air transportation does not apply to those such as Charter Air who are exempted. Exempted air carriers do not receive authority. They do not require authority, for they are not constrained.

Application of other statutory construction principles leads to the same conclusion. "Every statute must be viewed in its entirety so that each part has a sensible and intelligent effect harmonious with the whole." *Payne v. Panama Canal Company*, 607 F.2d 155, 164 (5th Cir. 1979). Construing the Act's preemption clause to preclude state regulation of exempt air carriers would render nonsensical other portions of the Act passed contemporaneously with the preemption clause. Four subsections of Title IV plainly contemplate state regulation of exempted air carriers. Title 49, United States Code, Section 1371(d)(4)(A),[6] autho-

rizes "any citizen of the United States who undertakes, *within any State*, the carriage of persons or property as a common carrier for compensation or hire with aircraft capable of carrying thirty or more persons pursuant to authority for such carriage *within such State granted by the appropriate State agency*" to establish services which include transportation by an air carrier or foreign air carrier and to enter joint fare, rate, or service agreements with an air carrier or foreign air carrier. (Emphasis supplied). The amount of any joint fare or rate established is limited to the lowest of three figures. One of those figures is "the sum of the applicable *fare or rate for service in the State approved by the appropriate State agency*, and the applicable fare or rate for that part of the through service provided by the air carrier or foreign air carrier." 49 U.S.C. § 1371(d)(4)(B)(i).[7] (Emphasis supplied). An intrastate "air carrier which has a valid *certificate or license issued by a State regulatory authority to engage in intrastate air transportation* and which has operated more than one hundred million available seat–miles in intrastate air transportation in the preceding calendar year" may apply to the Board for a certificate authorizing a non–stop point to point interstate or foreign air transportation route. 49 U.S.C. § 1371(d)(7)(A)(ii).[8] (Emphasis supplied).

When any intrastate air carrier which on August 1, 1977, was operating primarily in *intrastate air transportation regulated by a State* receives the authority to provide interstate air transportation, *any authority received from such State* shall be considered to be part of its authority to provide air transportation received from the Board under subchapter IV of this chapter until modified, suspended, amended, or terminated as provided under such subchapter.

49 U.S.C. § 1305(c).[9] (Emphasis supplied).

---

**5.** P.L. 95–504, § 32.

**6.** P.L. 95–504, § 9.

**7.** *Id.*

**8.** P.L. 95–504, § 12.

**9.** P.L. 95–504, § 4.

Construing the Act's preemption clause to forbid state regulation of exempted air carriers would make the foregoing provisions of Title IV meaningless. More than contemplating the existence of state regulation, they obviously rely upon and adopt it.

A statute's purpose is also a key to its meaning. *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979); *Rogers v. Frito–Lay, Inc.,* 611 F.2d 1074 (5th Cir. 1980). Nothing in the preemption clause's purpose indicates any intent or necessity for prohibiting state regulation of exempt air carriers. Congress enacted the preemption clause to resolve "uncertainties and conflicts, including situations in which carriers have been required to charge different fares for passengers traveling between two cities, depending on whether these passengers were interstate passengers whose fares are regulated by the CAB, or intrastate passengers, whose fare is regulated by a State." House Report No. 95–1211 at 16, 4 U.S.Code and Admin.News 1978, pp. 3751, 3752 (1979) (footnote omitted). When a carrier is exempt and its rates, therefore, are not regulated by the CAB, state regulation will not cause "uncertainties and conflict."

Expanding the scope of the statutory purpose examined from the purpose of the preemption clause to the purpose of the entire Airline Deregulation Act, there is still no indication that Congress intended for exemption from Civil Aeronautics Board regulation to preempt state regulation of airlines. The entire Airline Deregulation Act of 1978, the House Report No. 95–1211 (4 United States Code and Administrative News, p. 3737 [1979]), and the House Conference Report No. 95–1779 (4 United States Code and Administrative News, p. 3773 [1979]) all indicate Congress' purpose was reducing federal regulation of airlines. Only where state and federal regulation overlap did Congress indicate any purpose to affect state regulation. There is no overlap in state regulation of exempt air carriers.

All logically relevant factors lead to the conclusion that states may regulate air carriers exempted pursuant to Title 49, United States Code, Section 1386(b)(4), from Board regulation. Such exemptions are not grants of authority under subchapter IV, and the preemption clause, therefore, does not affect state regulation. This conclusion is not inconsistent with the decision in *Braniff International, Inc. v. Florida Public Service Commission,* TCA No. 76–4 (March 30, 1979), which declared Section 330.53, Florida Statutes (1979), expressly preempted.

> Florida Statutes § 330.53 empowers the Florida Public Service Commission 'to disapprove any change in a rate, fare, or schedule between points in this state of a person engaged in air transportation pursuant to a certificate or certificates issued by the Civil Aeronautics Board pursuant to s. 401 of the Federal Aviation Act of 1958 . . . .'

*Id.* at 2; footnote omitted. In contrast Florida's jurisdiction over Charter Air is created in a statute neatly meshing with the preemption clause and carefully excluding from its purview persons operating under certificates of authority from the Board. § 330.46, Fla.Stat. (1979).

The Plaintiff's Motion for Summary Judgment is denied. The Defendant's Motion for Summary Judgment is granted. The Clerk shall assess all lawful costs against the Plaintiff.