Renee ROGERS, et al., Plaintiff,

v.

AMERICAN AIRLINES, INC., R. L. Crandall, President of American Airlines, and Robert Zurlo, in his capacity as Manager, Defendants.

No. 81 Civ. 4474.

United States District Court, S. D. New York.

Dec. 1, 1981.

James J. Meyerson, New York City, (Vernon Mason, New York City, of counsel), for plaintiff.

Schoeman, Marsh, Updike & Welt, New York City, (Charles B. Updike, and Nancy Connery, New York City, of counsel), for defendants.

SOFAER, District Judge.

Plaintiff is a black woman who seeks $10,000 damages, injunctive, and declaratory relief against enforcement of a grooming policy of the defendant American Airlines that prohibits employees in certain employment categories from wearing an all-braided hairstyle. Plaintiff has been an American Airlines employee for approximately eleven years, and has been an airport operations agent for over one year. Her duties involve extensive passenger contact, including greeting passengers, issuing boarding passes, and checking luggage. She alleges that the policy violates her rights under the Thirteenth Amendment of the United States Constitution, under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* (1976), and under 42 U.S.C. § 1981 (1976), in that it discriminates against her as a woman, and more specifically as a black woman. She claims that denial of the right to wear her hair in the "corn row" style intrudes upon her rights and discriminates against her. Plaintiff has exhausted her administrative remedies and has been issued a right to sue letter by the Equal Employment Opportunity Commission ("EEOC").

■ Defendants move to dismiss plaintiff's claims. Insofar as the motion is addressed to the claim under the Thirteenth Amendment, it is meritorious. That provision prohibits practices that constitute a "badge of slavery" and, unless a plaintiff alleges she does not have the option of leaving her job, does not support claims of racial discrimination in employment. *See, e. g., Davis v. Pepsi Cola Metropolitan Bottling Co.,* 18 F.E.P. Cases 531, 533 (E.D.Pa.

1978). Plaintiff has made no such allegation.

■ The motion is also meritorious with respect to the statutory claims insofar as they challenge the policy on its face. The statutory bases alleged, Title VII and section 1981, are indistinguishable in the circumstances of this case, and will be considered together. *Carrion v. Yeshiva University,* 535 F.2d 722, 729 (2d Cir. 1976). The policy is addressed to both men and women, black and white. Plaintiff's assertion that the policy has practical effect only with respect to women is not supported by any factual allegations. Many men have hair longer than many women. Some men have hair long enough to wear in braids if they choose to do so. Even if the grooming policy imposed different standards for men and women, however, it would not violate Title VII. *Longo v. Carlisle DeCoppet & Co.,* 537 F.2d 685 (2d Cir. 1976) (per curiam); *Fountain v. Safeway Stores, Inc.,* 555 F.2d 753, 755 (9th Cir. 1977); *Willingham v. Macon Telegraph Publishing Co.,* 507 F.2d 1084, 1092 (5th Cir. 1975) (en banc). It follows, therefore, that an even-handed policy that prohibits to both sexes a style more often adopted by members of one sex does not constitute prohibited sex discrimination. This is because this type of regulation has at most a negligible effect on employment opportunity. It does not regulate on the basis of any immutable characteristic of the employees involved. It concerns a matter of relatively low importance in terms of the constitutional interests protected by the Fourteenth Amendment and Title VII, rather than involving fundamental rights such as the right to have children or to marry. *Willingham v. Macon Telegraph Publishing Co., supra,* 507 F.2d at 1091. The complaint does not state a claim for sex discrimination.

■ The considerations with respect to plaintiff's race discrimination claim would clearly be the same, *see Smith v. Delta Air Lines,* 486 F.2d 512 (5th Cir. 1973), except for plaintiff's assertion that the "corn row" style has a special significance for black women. She contends that it "has been,

historically, a fashion and style adopted by Black American women, reflective of cultural, historical essence of the Black women in American society." Plaintiff's Memo. in Opposition to Motion to Dismiss, p. 4. "The style was 'popularized' so to speak, within the larger society, when Cicely Tyson adopted the same for an appearance on nationally viewed Academy Awards presentation several years ago. . . . It was and is analogous to the public statement by the late Malcolm X regarding the Afro hair style. . . . At the bottom line, the completely braided hair style, sometimes referred to as corn rows, has been and continues to be part of the cultural and historical essence of Black American women." *Id.* at 4–5. "There can be little doubt that, if American adopted a policy which foreclosed Black women/all women from wearing hair styled as an 'Afro/bush,' that policy would have very pointedly racial dynamics and consequences reflecting a vestige of slavery unwilling to die (that is, a master mandate that one wear hair divorced from ones historical and cultural perspective and otherwise consistent with the 'white master' dominated society and preference thereof)." *Id.* at 14–15.

Plaintiff is entitled to a presumption that her arguments, largely repeated in her affidavit, are true. But the grooming policy applies equally to members of all races, and plaintiff does not allege that an all-braided hair style is worn exclusively or even predominantly by black people. Moreover, it is proper to note that defendants have alleged without contravention that plaintiff first appeared at work in the all-braided hairstyle on or about September 25, 1980, soon after the style had been popularized by a white actress in the film "10." Affidavit of Robert Zurlo. Plaintiff may be correct that an employer's policy prohibiting the "Afro/bush" style might offend Title VII and section 1981. But if so, this chiefly would be because banning a natural hairstyle would implicate the policies underlying the prohibition of discrimination on the basis of immutable characteristics. *But cf. Smith v. Delta Air Lines, supra,* (upholding no-mustache, short-sideburn policy despite showing that black males had more difficulty complying due to nature of hair growth). In any event, an all-braided hairstyle is a different matter. It is not the product of natural hair growth but of artifice. An all-braided hair style is an "easily changed characteristic," and, even if socioculturally associated with a particular race or nationality, is not an impermissible basis for distinctions in the application of employment practices by an employer. *Garcia v. Gloor,* 618 F.2d 264, 269 (5th Cir. 1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981); *Wofford v. Safeway Stores, Inc.,* 78 F.R.D. 460, 469 (N.D.Cal. 1978); *Carswell v. Peachford Hospital,* 26 EPD ¶ 32,012 (N.D.Ga.1981) (employee fired for wearing "corn row" style in violation of hospital policy not entitled to relief under Title VII). The Fifth Circuit recently upheld, without requiring any showing of business purpose, an employer's policy prohibiting the speaking of any language but English in the workplace, despite the importance of Spanish to the ethnic identity of Mexican-Americans. *Garcia v. Gloor, supra,* 618 F.2d at 267–69. The court stated that Title VII

is directed only at specific impermissible bases of discrimination—race, color, religion, sex, or national origin. National origin must not be confused with ethnic or sociocultural traits. . . . Save for religion, the discriminations on which the Act focuses its laser of prohibition are those that are either beyond the victim's power to alter, or that impose a burden on an employee on one of the prohibited bases. . . . "[A] hiring policy that distinguishes on some other ground, such as grooming codes or length of hair, is related more closely to the employer's choice of how to run his business than to equality of employment opportunity."

*Id.* at 269 (footnotes and citations omitted).

Although the Act may shield "employees' psychological as well as economic fringes" from employer abuse, *see Rogers v. EEOC,* 454 F.2d 234, 238 (5th Cir. 1971), *cert. denied,* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972) (optical clinic's practice

of segregating patients on the basis of national origin may create a "discriminatory atmosphere" in violation of minority employees' rights), plaintiff's allegations do not amount to charging American with "a practice of creating a working environment heavily charged with ethnic or racial discrimination," or one "so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of minority group workers...." *Id.* If an even-handed English-only policy that has the effect of prohibiting a Mexican-American from speaking Spanish during working hours is valid without a showing of business purpose, the policy at issue here, even if ill-advised, does not offend the law.

Moreover, the airline did not require plaintiff to restyle her hair. It suggested that she could wear her hair as she liked while off duty, and permitted her to pull her hair into a bun and wrap a hairpiece around the bun during working hours. A similar policy was approved in *Carswell v. Peachford Hospital, supra.* Plaintiff has done this, but alleges that the hairpiece has caused her severe headaches. A larger hairpiece would seem in order. But even if any hairpiece would cause such discomfort, the policy does not offend a substantial interest. *Cf. EEOC v. Greyhound Lines, Inc.,* 635 F.2d 188 (3d Cir. 1980) (upholding no-beard policy despite showing that some black men had difficulty complying due to racially-linked skin disease).

■ Plaintiff has failed to allege sufficient facts to require defendants to demonstrate that the policy has a bona fide business purpose. *See Garcia v. Gloor, supra,* 618 F.2d at 269. In this regard, however, plaintiff does not dispute defendant's assertion that the policy was adopted in order to help American project a conservative and business-like image, a consideration recognized as a bona fide business purpose. *E. g., Fagan v. National Cash Register Co.,* 481 F.2d 1115, 1124–25 (D.C.Cir.1973). Rather she objects to its impact with respect to the "corn row" style, an impact not protected against by Title VII or section 1981.

■ Plaintiff also asserts in her complaint that the regulation has been applied in an uneven and discriminatory manner. She claims that white women in particular have been permitted to wear pony tails and shag cuts. She goes on to claim, in fact, that some black women are permitted to wear the same hairstyle that she has been prohibited from wearing. These claims seriously undercut her assertion that the policy discriminates against women, and her claim that it discriminates against black women in particular. Conceivably, however, the complaint could be construed as alleging that the policy has been applied in a discriminatory manner against plaintiff because she is black by some representative of the defendant. On its face, this allegation is sufficient, although it might be subject to dismissal on a summary judgment motion if it is not supplemented with some factual claims.

■ This remaining claim—of racially discriminatory application—by its nature is not appropriate for class action treatment. In light of plaintiff's assertions that both white and black women in the purported class have been permitted to wear the all-braided style, she seems to be saying, ultimately, that there are no similarly situated people, and she does not identify any. Therefore, the motion for class certification is denied. *DeMarco v. Edens,* 390 F.2d 836, 845 (2d Cir. 1968). Indeed, even as broadly alleged, plaintiff's claims would not warrant certification of a class. Plaintiff seeks specific retroactive monetary relief only for herself and not for any class members. With respect to the class, plaintiff seeks a change in company policy, and a victory in plaintiff's case, with an injunctive and declaratory order, would afford relief to all similarly situated people. *See Galvan v. Levine,* 490 F.2d 1255, 1261 (2d Cir. 1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974); *Davis v. Smith,* 607 F.2d 535, 540 (2d Cir. 1978), *vacated and remanded on other grounds,* 607 F.2d at 540 (1979).

■ Finally, the complaint must be dismissed as to both the individual defendants,

**234**

Crandall and Zurlo. Crandall is a resident of Texas, over whom no basis for jurisdiction as an individual is alleged. *See Lehigh Valley Industries, Inc. v. Birenbaum*, 527 F.2d 87, 92 (2d Cir. 1975). Furthermore, neither of the individual defendants was named in plaintiff's EEOC complaint, so the jurisdictional requirement of 42 U.S.C. § 2000e–5(f)(1) has not been satisfied. *E. g., Travers v. Corning Glass Works*, 76 F.R.D. 431, 432–33 (S.D.N.Y.1977).

This action is dismissed, except for plaintiff's claim of discriminatory treatment in the application of the grooming policy. Fed.R.Civ.P. 12(b)(6). The complaint against the individual defendants is dismissed for lack of jurisdiction. Fed.R. Civ.P. 12(b)(1) & (2). The motion for class certification is denied. Fed.R.Civ.P. 23.

SO ORDERED.