EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Plaintiff,

v.

SYNCHRO–START PRODUCTS,
INC., Defendant.

No. 98 C 7047.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 20, 1999.

Mary Manzo of EEOC, Chicago, IL, for Plaintiff.

Timothy Riordan of Defrees & Fiske, Chicago, IL, for Defendant.

*MEMORANDUM OPINION
AND ORDER*

SHADUR, Senior District Judge.

Equal Employment Opportunity Commission ("EEOC") brought this action under Title VII of the Civil Rights Act of 1964 as amended ("Title VII," 42 U.S.C. §§ 2000e to 2000e–17) and Title I of the Civil Rights Act of 1991 (42 U.S.C. § 1981a) [1] against Synchro–Start Products, Inc. ("Synchro–Start") on behalf of Brian Sudol ("Sudol") and a class of employees, claiming intentional unlawful employment practices on the basis of the employees' national origin.[2] EEOC's main assertion is that Synchro–Start deprived Sudol and other employees of equal employment

---

1. Because the latter statute deals only with damages for a plaintiff who succeeds in an employment discrimination action, this opinion (like the parties' submissions) focuses only on the substantive Title VII issues.

2. After Synchro–Start had attacked the original Complaint by filing a Fed.R.Civ.P. ("Rule") 12(b)(6) motion for its dismissal, EEOC responded on January 13, 1999 by filing both a responsive memorandum and a First Amended Complaint ("FAC")—the latter filing being a matter of right under Rule 15(a) because no answer or motion for summary judgment had been filed.

opportunities on the basis of their national origin by requiring them to speak only English during working hours. EEOC further claims that Synchro–Start violated Title VII by failing, before it implemented that English-only rule, to explain to its employees what consequences would or could flow from violating the rule.

Instead of treating Synchro–Start's motion to dismiss as having been mooted by the FAC (see n. 2), this Court considers it more efficient to address the aspects of that new pleading that would remain vulnerable to Rule 12(b)(6) dismissal if Synchro–Start's contentions were sound—a procedure that eliminates any need for the latter to relaunch the same missiles. In that light, the motion is denied for the reasons set forth in this memorandum opinion and order.

### Facts According to the FAC [3]

Synchro–Start employs approximately 200 employees, many of whom are of Polish or Hispanic national origin. Since at least September 15, 1997 Synchro–Start has required its employees to speak only English during working hours. That rule is applied to employees with varying degrees of English proficiency (some speak no English or very little English). Synchro–Start did not explain the consequences of violating the English-only rule to its employees before implementing the rule.

### Rule 12(b)(6) Standards

For the present, all of the FAC's well-pleaded allegations must be credited, with all reasonable inferences drawn in EEOC's favor (*Sherwin Manor Nursing Ctr., Inc. v. McAuliffe*, 37 F.3d 1216, 1219 (7th Cir.1994)). Dismissal is proper only if it is clear from the FAC that no set of facts consistent with its allegations would entitle EEOC to relief (*Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

---

**3.** Although this opinion of course makes no factual findings, it omits such qualifying labels as "alleged" because of the need to credit the FAC's allegations on the current motion.

**4.** In the Rule 12(b)(6) context, the absence of any "legitimate business need[ ]" on Synchro–Start's

### Title VII Claim

Under traditional Title VII analysis "[i]n a disparate impact case, the plaintiff must prove that the challenged practice is discriminatory because it has a disparate impact unjustified by the defendant's legitimate business needs" (*Melendez v. Illinois Bell Tel. Co.*, 79 F.3d 661, 668 (7th Cir.1996)). That summary telescoping of the plaintiff's burden of proof with a reference to "unjustified" business needs should not be misunderstood: Unlike a Title VII disparate treatment claim, where the burden of production may shift but the burden of persuasion always remains on the plaintiff (*McDonnell–Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)), in the disparate impact situation the employee's demonstration of such an impact shifts the burden of persuasion as to the existence of legitimate business needs to the employer (42 U.S.C. § 2000e–2(k), hereafter simply "Section 2000e–2(k)").

Because any English-only rule unarguably impacts people of some national origins (those from non-English speaking countries) much more heavily than others, it is easy to imagine a set of facts consistent with the FAC's allegations that would entitle EEOC to relief (*Hishon*, 467 U.S. at 73, 104 S.Ct. 2229).[4] That alone should enable EEOC to withstand Synchro–Start's motion to dismiss, but given the existence of authority upholding certain English-only rules in other Circuits, the question certainly calls for more extended discussion.

Although each of the three Courts of Appeals that has examined the issue has upheld the validity of an employer's English-only rule, no such court has knocked the plaintiff out of the running at the very outset by finding that English-only rules could never violate Title VII. Each decision examining such a rule in a disparate impact framework [5]

---

part (such a need would be a potential defense to Title VII liability under Section 2000e–2(k)) must also be assumed.

**5.** *Long v. First Union Corp.*, 86 F.3d 1151 (4th Cir.1996) (per curiam) (unpublished opinion) dealt with an English-only rule in a disparate

has limited its holding to situations where the employee has the ability to speak English (*Garcia v. Spun Steak Co.*, 998 F.2d 1480, 1488 (9th Cir.1993); *Gonzalez v. Salvation Army*, 985 F.2d 578 (11th Cir.1993) (unpublished opinion affirming findings of law and fact in 1991 U.S. Dist. LEXIS 21692, at *7 (M.D.Fla. May 28)); *Garcia v. Gloor*, 618 F.2d 264, 270 (5th Cir.1980)).[6] By contrast, FAC ¶ 7(b) alleges that Synchro–Start's English-only rule is applied to employees "who speak no English or whose ability to speak English is limited."

On that score *Spun Steak*, 998 F.2d at 1488 has said, quoting *Gloor*, 618 F.2d at 270:

> As applied "[t]o a person who speaks only one tongue or to a person who has difficulty using another language than the one spoken in his home," an English-only rule might well have an adverse impact.

With respect to that subset of employees, then, EEOC plainly states a viable claim. But this Court, writing on a clean slate in this Circuit, goes beyond that easy case to find it possible to impose liability across a broader spectrum—perhaps even as to those bilingual employees who can "readily comply with the English-only rule and still enjoy the privilege of speaking on the job" (*Spun Steak*, 998 F.2d at 1487).

Congress has charged EEOC with the interpretation, administration and enforcement of Title VII. In the exercise of that authority, EEOC has promulgated a Guideline specifically addressing English-only rules: Under 29 C.F.R. § 1606.7 ("Reg. § 1606.7") an English-only rule such as Synchro–Start's violates Title VII unless the employer can establish a business necessity for the rule.[7] That reverses the effect of the absence of evidence (or the theoretically possible, but rare, equipoise of evidence) on the subject of business necessity, a shifting of burdens that occurs under the Guideline whether or not the employees are proficient in English.

*Albemarle Paper Co. v. Moody*, 422 U.S. 405, 431, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (internal quotation marks from *Griggs v. Duke Power Co.*, 401 U.S. 424, 433–34, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) omitted) teaches that EEOC guidelines "constitute the administrative interpretation of [Title VII] by the enforcing agency and consequently are entitled to great deference." *Gilardi v. Schroeder*, 833 F.2d 1226, 1232 (7th Cir.1987) echoes that view:

> This Court is also bound to give substantial weight to the EEOC's interpretation of the statute that it administers.

Nevertheless *Spun Steak*, 998 F.2d at 1489–90 rejected EEOC's English-only Guideline[8] because that Guideline presumes in the absence of other proof that an English-only policy has a disparate impact, thus evoking a shift to the employer to demonstrate some business necessity for that policy.

It should be made clear just what is and what is not at issue in this case. If the question were whether EEOC could adopt a

---

treatment context, considering only whether the rule was discriminatorily enforced, not whether the very existence of the rule created discrimination based on national origin. Defendants' summary judgment victory was upheld on appeal because there were insufficient facts to prove disparate treatment.

**6.** Because two of the three Courts of Appeals decisions share a *Garcia* name plaintiff (though of course the plaintiffs were not the same person), this opinion will utilize only the names of their respective defendants (*Spun Steak* and *Gloor*) for shorthand reference purposes.

**7.** Reg. § 1606.7 breaks English-only rules into two types: (1) rules applied at all times, which are presumed to violate Title VII and are closely scrutinized, and (2) rules applied only at certain times, which are allowed where the employer demonstrates a business necessity for the rule. Here FAC ¶ 7 states that employees are required

"to speak only English during working hours," an obligation that could arguably fit the "at all times" category. But because EEOC itself has placed Synchro–Start's rule within the less stringently scrutinized category (EEOC Mem. 1, 4), this opinion will deal with it in that same manner.

**8.** Because *Gonzalez*, 985 F.2d 578 makes no mention of the EEOC Guideline, it is unclear whether it was accepted or rejected, but the district court's use of the legitimate business purpose rationale for upholding the rule and the lack of attention paid by that court to whether the rule had a disparate impact at least suggests that the Guideline was accepted. *Gloor*, 618 F.2d at 268 n. 1 (an opinion issued before the Guideline was adopted) expressly noted that the decision was rendered in the absence of any guidance from EEOC regulations, so that the court "approach[ed] the problem on the basis of the statute itself and the case law."

regulation that placed the burden of persuasion on an employer in every instance as to the existence of a business necessity for every one of its shop rules, the answer would have to be "no." After all, the *Chevron*-type of bow to the administrative agency's expertise—the *Albemarle–Gilardi* deference to the agency's statutory *interpretation*—does not extend to conferring true legislative power on the agency: If the statute is clear, it is Congress' will (and not any contrary views of the agency as to what policy is wise) that necessarily controls. And here Section 2000e–2(k) provides that in a disparate impact case the employer's obligation to demonstrate a business necessity is triggered only after the employee has borne his or her burden of demonstrating a disparate impact from a statutorily prohibited employment practice.

■ In this instance EEOC has taken a far more modest step: It has said that an English-only rule creates an *inference* that the foreign national is disadvantaged in his or her employment because of his or her national origin. What that creates in evidentiary terms is a tie-breaker. If the only evidence placed before the factfinder were the existence of such a rule, with no explanation being proffered either way as to the reason for the rule or as to the manner in which it actually impacts, that level of evidentiary silence would call for a verdict in the employee's favor rather than the employer's on the element of disparate impact. And in those terms the question really becomes one of interpretation rather than of any effort to override legislative intent—a proper sphere for extending deference to the agency's knowledge and experience.

It should be emphasized that *Spun Steak,* the only Court of Appeals decision that has actually rejected the EEOC Guideline, dealt with an appeal from a summary judgment that had been granted in favor of *employees,* despite the employer's proffer of evidence as to a stated business reason for the English-only rule ("complaints that some workers were using their bilingual capacities to harass and to insult other workers in a language they could not understand" (998 F.2d at 1483)). Although that demonstration of a factual issue would normally spell doom for any summary judgment disposition, the Dis-

trict Court had found as a matter of law that the case involved a discriminatory disparate impact on Spanish-speaking employees, with no showing of a business justification. By contrast, the Court of Appeals majority found an absence of evidence of any disparate impact—at least as to bilingual employees (*id.* at 1489)—and went on to reject the EEOC Guideline in these terms (*id.*):

> In holding that the enactment of an English-only while working policy does not inexorably lead to an abusive environment for those whose primary language is not English, we reach a conclusion opposite to the EEOC's long standing position. The EEOC Guidelines provide that an employee meets the prima facie case in a disparate impact cause of action merely by proving the existence of the English-only policy. See 29 C.F.R. § 1606.7(a) & (b)(1991). Under the EEOC's scheme, an employer must always provide a business justification for such a rule. *Id.*

That of course substitutes a pejorative characterization for a simple recognition of the effect of EEOC's presumption, which is only to move the inquiry to the second step prescribed by the statute—the employer's need to identify a business justification (which, although the just-quoted language describes it as "the EEOC's scheme," is really Congress' express mandate). And in those terms this Court is persuaded by Reg. § 1606.7's explanation of the presumption that such English-only rules may "create an atmosphere of inferiority, isolation and intimidation based on national origin which could result in a discriminatory working environment." As Judge Boochever put it persuasively in his dissent from *Spun Steak,* 998 F.2d at 1490:

> It is hard to envision how the burden of proving such an effect would be met other than by conclusory self-serving statements of the Spanish-speaking employees or possibly by expert testimony of psychologists. The difficulty of meeting such a burden may well have been one of the reasons for the promulgation of the guideline. On the other hand, it should not be difficult for an employer to give specific reasons for the

policy, such as the safety reasons advanced in this case.

Little wonder, then, that the denial of en banc reconsideration of *Spun Steak* at 13 F.3d 296 (9th Cir.1993) evoked a powerful dissent from Judge Reinhardt. That opinion (*id.*) should be read in full to appreciate its total impact.[9] But for purposes of the analysis here, special attention is due to its demonstration that the analysis by the panel majority (like the proverbial Emperor) is revealed to have no clothes when that analysis of the EEOC's Guideline and its prima facie approach are subjected to careful scrutiny (*id.* at 299–300). For the reasons stated earlier, this Court credits the EEOC Guideline and, having done so, upholds the FAC's Title VII claim.

### Conclusion

Both EEOC's FAC and its challenged Guideline comport with the requirements for a viable Title VII claim. Synchro–Start's motion to dismiss is therefore denied, and it is ordered to answer the FAC on or before January 29, 1999.[10]

---

**9.** A disparate impact?

**10.** Not much courage is needed for a law review editor to disagree—even to the extent of the sharpest criticism—with any court, including the most exalted in the jurisprudential hierarchy. Indeed, such disagreements have been the stock in trade of student-edited law reviews from the very beginning. When the law review editor becomes a judicial law clerk, however, the change in roles (and in responsibilities) obviously carries with it the need for far greater caution—for the recommendation to a District Judge that he or she should reject out-of-circuit precedent from a respected Court of Appeals should not be undertaken lightly. It is typical of the fine work of this Court's first-rate law clerk Kathryn Price that she has had both the courage and the per-

ceptiveness to recommend that this Court disavow what the Ninth Circuit held and said in *Spun Steak,* a disavowal that also calls for staking out a legal position that has not been espoused by any appellate court. As this opinion shows, this Court has found that recommendation to be entirely sound and well-taken. It should of course be understood (as this Court invariably makes clear in paying tribute to its always outstanding law clerks) that this Court has not only arrived at its own independent conclusion on the subject but has painstakingly reworked each sentence and read each case cited in this opinion, so that this end product is totally this Court's own. If then any errors have found their way into the final version of this opinion, the sole responsibility is this Court's and not that of its law clerk.