**Robert Arthur DOLLINGER, Plaintiff,**

**v.**

**The STATE INSURANCE FUND; New York State Office of the State Comptroller; and The New York State Department of Civil Service, Defendants.**

**No. 98–CV–1002.**

United States District Court, N.D. New York.

April 19, 1999.

Law Offices of Ronald R. Benjamin, Binghamton, NY, for plaintiff, of counsel Marya C. Young.

State of New York, Office of the Attorney General, Division of State Counsel, The Capitol, Albany, NY, for defendants, of counsel Sean D. Quinn, AAG.

## MEMORANDUM—DECISION & ORDER

McAVOY, Chief Judge.

Plaintiff Robert Dollinger ("plaintiff") commenced the instant action on January 12, 1998 pursuant to 42 U.S.C. § 12101 *et seq.* and 42 U.S.C. § 2000e *et seq.* against defendants The State Insurance Fund ("SIF"), New York State Office of the State Comptroller and The New York State Department of Civil Service (collectively "defendants") alleging, inter alia, that defendants discriminated and retaliated against him on the bases of his association with persons living with HIV/AIDS and as a person who is himself living with HIV/AIDS. *See* Compl. at ¶ 20. This matter is presently before the Court upon defendants' motion to dismiss the Complaint pursuant to FED.R.CIV.P. 12(b)(6).

## I. BACKGROUND

In considering a motion to dismiss, the Court accepts as true the factual allegations in the Complaint. *See Dwyer v. Regan,* 777 F.2d 825, 828–29 (2d Cir.1985). Those allegations follow.

Plaintiff filed his Complaint on January 12, 1998 in the Southern District of New York. The Complaint asserts claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.,* alleging plaintiff was subjected to unequal terms, conditions and privileges of employment, harassment and a hostile retaliatory work environment because of his association with persons with HIV/AIDS and being regarded as a person with HIV/AIDS. Plaintiff further alleges that defendants retaliated against him for reporting those discriminatory practices. *See* Compl. at ¶¶ 16, 20, 38, 42, 52–53. All of plaintiff's

claims arise out of the same factual setting.

Defendant SIF hired plaintiff as an Insurance Premium Auditor Trainee in 1986. Plaintiff received promotions in 1987 and 1988, and was asked to train new auditors from 1988 through 1990. Since 1990, however, plaintiff alleges he has applied for, but been denied, provisional or permanent promotions based on defendants' regarding him as a person living with HIV/AIDS and as a person associated with persons living with HIV/AIDS. Plaintiff further alleges that defendants denied him these promotions in response to plaintiff's efforts to report defendants' alleged discriminatory practices. Plaintiff is currently employed as a Senior Auditor with SIF.

In Complaints filed with the New York State Division of Human Rights ("DHR") on May 11, 1993 ("1993 DHR Complaint") and February 12, 1997 ("1997 DHR Complaint"), plaintiff claimed that he was denied promotions at SIF and discriminated against because of defendants' perception that he belonged to a group associated with the high risk behaviors for HIV/AIDS. *See* Defts. Notice of Motion to Dismiss, Ex. A, at ¶¶ 1, 8 (1993 DHR Complaint); Ex. D, at ¶¶ 1, 14, 31 (1997 DHR Complaint). Plaintiff subsequently amended his 1993 and 1997 DHR Complaints to include violations of the ADA. *See* Defts. Notice of Motion to Dismiss, Ex. E ("Amended 1997 DHR Complaint"); Ex. F ("Amended 1993 DHR Complaint").

On April 25, 1997, the DHR issued a no probable cause determination with respect to plaintiff's 1993 DHR Complaint.[1] Significantly, plaintiff does not allege, nor does the record reflect, that plaintiff received or requested a right to sue letter with respect to his 1993 DHR Complaint.

---

1. The DHR also deemed plaintiff's 1997 Amended DHR Complaint a "nullity" because DHR did not have disability coverage under its worksharing agreement with the EEOC, and the statutory period for filing the ADA charge on the 1993 DHR Complaint had ex-

pired. *See* Defts. Notice of Motion to Dismiss, Ex. G, at 3 (Inter–Office Memorandum of Lawrence Kunin, General Counsel, DHR, dated December 4, 1997) (hereinafter "DHR Legal Memorandum").

While the 1997 DHR Complaint alleged acts of discrimination and retaliation similar to those alleged in the 1993 DHR Complaint, it also included new acts of discrimination occurring after the filing of the 1993 DHR Complaint. The DHR determined that any allegations in the second complaint that were duplicative of the first complaint be removed, and it only investigate "those acts of discrimination which occurred subsequent to the date of filing of the first complaint." *See* DHR Legal Memorandum, at 4. On October 10, 1997, the EEOC issued plaintiff a right to sue letter with respect to his Amended 1997 DHR Complaint. *See* Compl. at Ex. 1. Significantly, the federal Complaint did not incorporate or reference a copy of a right to sue letter for the 1993 DHR Complaint, or that plaintiff had requested, but not yet received, such a letter. On April 22, 1998, the DHR dismissed plaintiff's 1997 DHR Complaint for administrative convenience. *See* Defts. Notice of Motion to Dismiss, Ex. H.

Plaintiff filed his federal Complaint on January 8, 1998 in the Southern District of New York. Upon motion by defendants pursuant to 28 U.S.C. § 1404(a), the matter was transferred to the Northern District of New York. *See Dollinger v. The State Insurance Fund,* 98–CV–0173 (Opinion and Order of Hon. Allen G. Schwartz, dated June 17, 1998).

On November 13, 1998, defendants filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). On November 20, 1998, plaintiff requested a postponement of this action to secure new counsel to replace plaintiff's prior counsel who had passed away. On December 1, 1998, plaintiff, proceeding pro se, filed opposition papers to defendants' motion to dismiss and requested additional time to retain new counsel. In response to that request, the Court granted plaintiff ninety days from December 7, 1998, the date of its Decision

and Order, to retain new counsel in the present matter. During that time, the Court ordered that defendants' motion to dismiss and plaintiff's opposition papers be held in abeyance. If, however, plaintiff was unable to retain new counsel by March 7, 1999, the Court ordered that it would decide defendants' motion to dismiss on submit.

On March 8, 1999, plaintiff filed a "Memorandum of Law in Opposition to Motion to Dismiss for Failure to State a Cause of Action"[2] and a three-page untitled addendum which appears to be a "supplemental" Memorandum of Law. Because plaintiff's opposition papers filed on December 1, 1998 and March 8, 1999 failed to contain an affidavit or certificate of service as required by N.D.N.Y. Local Rule 5.1(a), the Court rejected those papers and ordered that opposition papers with the requisite certificate of service be re-filed by March 17, 1999. On March 17, 1999, plaintiff re-filed his opposition papers with a certificate of service, and requested an entry of appearance for his new counsel, Law Offices of Ronald R. Benjamin, and an extension of time to file supplemental opposition papers. Once again, the Court granted plaintiff's request, and ordered plaintiff to file his opposition papers to defendants' motion to dismiss by Friday, March 26, 1999. The Court also permitted defendants to file reply papers, if they so choose, by Friday, April 2, 1999. Despite plaintiff's request and the Court's grant of an extension of time, plaintiff failed to file any new or supplemental opposition papers, or otherwise correspond with the Court. Accordingly, the Court will only consider plaintiff's opposition papers filed on December 1, 1997 and March 17, 1999.

## II. DISCUSSION

### A. Treatment of Exhibits

As a threshold matter, the Court must decide the proper treatment for various

---

**2.** This Memorandum of Law, with accompanying exhibits, is a copy of the Memorandum

of Law filed by plaintiff on December 1, 1998.

exhibits submitted by both parties in connection with defendants' motion to dismiss. Specifically, defendants have attached as exhibits in support of their motion to dismiss letters of complaint filed by plaintiff with the DHR and the EEOC, and the DHR's ruling with respect to plaintiff's 1993 and 1997 DHR Complaints. Although these documents of public record are referred to in plaintiff's federal Complaint, they are not annexed as exhibits thereto. Plaintiff, in similar fashion, has opposed defendants' motion to dismiss by submitting as exhibits the letters of complaint filed by him with the DHR and the EEOC and various determinations and investigative reports issued by the DHR and the EEOC in response to those complaints. Plaintiff also has submitted a right to sue letter issued by the EEOC with respect to his 1997 DHR Complaint, and an affidavit from plaintiff.

It is beyond peradventure that when "matters outside the pleadings are presented and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." FED.R.CIV.P. 12(b). However, because a complaint includes "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference," FED.R.CIV.P. 10(c); see, e.g., *Cosmas v. Hassett,* 886 F.2d 8 (2d Cir.1989), courts have held that a "defendant may introduce pertinent [documents] as part of his motion attacking the pleadings" if plaintiff has failed to either attach to the complaint or incorporate by reference documents upon which it relies on in the complaint. 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1327, at 762–63 (1990); *see also Cortec Ind., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992). As explained by the Second Circuit, "when a plaintiff chooses not to attach to the complaint or incorpo-

rate by reference a [document] upon which it solely relies and which is integral to the complaint, the defendant may produce the [document] when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure." *Cortec* 949 F.2d at 47; *Roucchio v. Coughlin,* 923 F.Supp. 360, 366 (E.D.N.Y. 1996).

■ Applying these principles, the Court finds that it may properly consider, as part of the pleadings, the various administrative complaints and determinations of the DHR and EEOC submitted by defendants. *See Jadoo v. City of New York,* 1997 WL 614508, at *2 (E.D.N.Y. Sept.29, 1997) (concluding EEOC charge attached as exhibit to defendants 12(b)(6) motion did not convert it to one for summary judgment); *Greene v. Term City, Inc.,* 828 F.Supp. 584, 587 n. 1 (N.D.Ill. 1993) (finding EEOC charge part of pleadings in connection with 12(b)(6) motion, even though it was not attached to the complaint). Although plaintiff's Complaint fails to incorporate these documents by reference or attach them to it, defendants may introduce these documents because the federal Complaint relies upon them on numerous occasions to support plaintiff's claims. *See Cortec,* 949 F.2d at 48. Moreover, to consider these documents would not surprise plaintiff, given his reliance on these items in both his federal Complaint and opposition to defendants' motion to dismiss. *See id.* Most likely, it was an oversight that plaintiff did not attach these items as exhibits.

In any event, judicial notice of the DHR and EEOC documents is proper on this motion to dismiss. The administrative complaints and findings are matters of public record, and their authenticity is not disputed by either party. *See Roucchio,* 923 F.Supp. at 366.

■ The Court, by contrast, will exclude from consideration the affidavit submitted by plaintiff in opposition to defen-

dants' motion to dismiss. This item may not be considered part of the pleadings under *Cortec*, nor will the Court convert defendants' motion to dismiss into a premature motion for summary judgment. *See Kopec v. Coughlin*, 922 F.2d 152, 154 (2d Cir.1991) (stating that when materials outside pleadings are submitted on 12(b)(6) motion, courts have option of excluding material or converting motion to one for summary judgment); *Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir. 1988) (same).

## B. Standard Under Rule 12(b)(6)

A district court should grant a motion to dismiss under FED.R.CIV.P. 12(b)(6) for failure to state a claim only if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); *Annis v. County of Westchester*, 36 F.3d 251, 253 (2d Cir.1994). In applying this standard, a district court must "read the facts alleged in the complaint in the light most favorable" to the plaintiff, and accept these allegations as true, *id.* at 249, 109 S.Ct. 2893; see also *Christ Gatzonis Elec. Contractor, Inc. v. New York City Sch. Constr. Auth.*, 23 F.3d 636, 639 (2d Cir.1994); *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991); *Cosmas*, 886 F.2d at 11, and to consider documents attached to or incorporated by reference in the complaint. *See Romea v. Heiberger & Assocs.*, 163 F.3d 111, 114 (2d Cir.1998) (citing *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir.1998)). The Court's duty is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980); *accord Goldman v. Bel-*

*den*, 754 F.2d 1059, 1067 (2d Cir.1985). The appropriate inquiry, therefore, is not "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see also Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 124 (2d Cir.1991) (plaintiff is not compelled to prove his case at the pleading stage). Therefore, the court should not dismiss on a Rule 12(b)(6) motion unless it appears clear that the plaintiff cannot in any way establish a set of facts to sustain his claim which would permit relief. *See Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Cooper*, 140 F.3d at 440 ("Although bald assertions and conclusions of law are insufficient, the pleading standard is nonetheless a liberal one."); *Boddie v. Schnieder*, 105 F.3d 857, 860 (2d Cir.1997); *Bernheim v. Litt*, 79 F.3d 318, 321 (1996); *Bass v. Jackson*, 790 F.2d 260, 262 (2d Cir.1986).

Additionally, the Rules do not require the claimant to set out in detail the facts upon which the claim is based, but only that a defendant be given "fair notice of what the claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Individual allegations, however, that are so baldly conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains are meaningless as a practical matter and, as a matter of law, insufficient to state a claim. *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.1987).

It is with this standard in mind that the Court addresses plaintiff's claims.

## C. Plaintiff's Title VII Claims

Plaintiff alleges claims of employment discrimination, harassment, and retaliation in violation of Title VII.[3]

---

**3.** The Court notes that a plaintiff may maintain a suit under Title VII against a state. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct.

2666, 49 L.Ed.2d 614 (1976) (concluding that Title VII's authorization of federal-court jurisdiction to award money damages against a

Title VII requires a claimant who desires to bring a suit in federal court to file a charge of discrimination with the EEOC within 180 days "after the alleged unlawful employment practice occurred," or within 300 days of the alleged discrimination if the claimant "has initially instituted proceedings with a State or local agency with authority to grant or seek relief ... or to institute criminal proceedings."[4] 42 U.S.C. § 2000e–5(e). Title VII further provides that "a civil action may be brought against the respondent named in the charge ... by the person claiming to be aggrieved" within 90 days of receipt of what is known as a "right-to-sue" letter from the EEOC. 42 U.S.C. § 2000e–5(f)(1). Although a right-to-sue letter is not a jurisdictional requirement, see *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Farrell v. State of New York*, 946 F.Supp. 185, 190 (N.D.N.Y.1996); *Nurse v. City of New York*, 739 F.Supp. 811, 811 (S.D.N.Y.1990), it is a statutory prerequisite for a Title VII action. Here, plaintiff has attached and made reference only to the right to sue letter issued by the EEOC with respect to his 1997 DHR Complaint.

Defendant argues that this Court lacks jurisdiction over plaintiff's Title VII claims that are based on allegations in the 1993 DHR Complaint because plaintiff failed to receive a right to sue letter relating to that complaint. Plaintiff's opposition papers fail to address this issue, and, more importantly, do not allege that a right to sue letter was ever requested or received with respect to the 1993 DHR Complaint.

■ The plaintiff has an obligation to produce a right to sue letter as a prerequisite to filing a Title VII action. *See Niroomand v. Erie County Med. Ctr.*, 1996 WL 328183, at *7 n. 20 (W.D.N.Y. June 4, 1996) (citing *Nurse*, 739 F.Supp. at 811–12); *Styles v. Philadelphia Elec. Co.*, 1994 WL 245469, at *1 (E.D.Pa. June 6, 1994); *see also McCullough v. CSX Transp. R.R. Co.*, 1995 WL 141494, at *4 (E.D.Pa. March 31, 1995) ("[D]iligence requires that [plaintiff] must either have attempted to obtain a determination letter from the EEOC or have raised the failure to issue the letter with the EEOC before filing suit."). To waive or toll the statutory requirement, plaintiff must show or allege that he made an effort to procure the right to sue letter or that he raised the failure to issue a right to sue letter with the EEOC prior to filing this action. *See Styles*, 1994 WL 245469, at *1 (citing *Nurse*, 739 F.Supp. at 811). Where, however, the plaintiff can not demonstrate such an effort, the case should be dismissed. *See id.*

■ Despite the absence of a record that can confirm or deny the issuance of a right to sue letter with respect to plaintiff's 1993 DHR Complaint, there is no evidence that plaintiff made any attempt to secure such a letter. *See Farrell*, 946 F.Supp. at 190 ("Significant to the Court's decision not to toll or waive the statutory requirement was the fact that 'there [was] no proof that [plaintiff] made any attempt to procure such letter.' ") (quoting *Nurse*, 739 F.Supp. at 811). Furthermore, it was incumbent upon plaintiff to state that he requested a right to sue letter and that the there was a failure on the part of the EEOC to issue a letter, if indeed there was such a failure, prior to the commencement of his suit in federal court.[5] Because

---

state government to individuals subjected to employment discrimination does not violate the Eleventh Amendment); *995 Fifth Avenue Assocs., L.P. v. New York State Dep't of Taxation and Fin.*, 963 F.2d 503, 507 (2d Cir.) (noting that "[a]brogation of Eleventh Amendment immunity typically occurs when Congress enacts a new federal statutory cause of action"), *cert. denied*, 506 U.S. 947, 113 S.Ct. 395, 121 L.Ed.2d 302 (1992); *Davis v. State Univ. of New York*, 802 F.2d 638, 640 (2d Cir.1986).

4. Defendants acknowledge that plaintiff was required, under Title VII and the ADA, to file his administrative charge within 300 days of the alleged unlawful employment practice. *See* Defts. Mem. of Law at 7–8, 11.

5. The right to sue letter issued by the EEOC referenced only the charge number corre-

there exists no reason to toll or waive the statutory requirement, those Title VII claims based upon allegations contained in the 1993 DHR Complaint are dismissed. To the extent plaintiff includes those same allegations in his 1997 DHR Complaint, those Title VII claims are similarly dismissed as time-barred. *See* 42 U.S.C. § 2000e–5(e)(1).

Title VII provides in pertinent part:

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . . .

42 U.S.C. § 2000e–2 (West 1994).

■ Title VII does not, by its express terms, prohibit all arbitrary employment practices. Rather, it is directed only at specific impermissible bases of discrimination such as race, color, religion, sex, or national origin. *See Garcia v. Gloor*, 618 F.2d 264, 269 (5th Cir.1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981); *Stroud v. Delta Air Lines, Inc.*, 544 F.2d 892, 894 (5th Cir.) ("Title VII does not purport to ban all discriminations, but only the specific forms enumerated by statute."), *cert. denied*, 434 U.S. 844, 98 S.Ct. 146, 54 L.Ed.2d 110 (1977); *King v. Seaboard Coast Line R.R. Co.*, 538 F.2d 581, 583 (4th Cir.1976) ("Title VII is limited in application to discrimination in employment based on race, color, religion, sex, or national origin; it does not cover other types of discrimination, however unfair they may be."); *Colesanti v. St. Patrick's Home*, 1992 WL 167389, at * 2 (S.D.N.Y. June 26, 1992); *Rogers v. American Airlines, Inc.*, 527 F.Supp. 229, 232 (S.D.N.Y.1981).

■ In the present case, plaintiff cannot establish a prima facie case of discrimination or retaliation under Title VII because he is not a member of any protected class under the statute.[6] Plaintiff's federal Complaint does not allege discrimination based on any of these improper considerations, but rather, discrimination based on being regarded as a person associated with persons living with HIV/AIDS, and as a person living with HIV/AIDS. *See* Compl. at ¶ 20. Plaintiff may have a remedy for such discrimination, but the avenue for such a remedy is the ADA, not Title VII. *See Rivera v. Heyman*, 982 F.Supp. 932, 940 (S.D.N.Y.1997) (holding that discrimination based on plaintiff's HIV status constituted discrimination on the basis of disability, which is not covered under Title VII), *rev'd, in part, on other grounds*, 157 F.3d 101, 105 (2d Cir.1998) (affirming district court's dismissal of plaintiff's Title VII claims). Because plaintiff fails to allege a prima facie case under Title VII, defendants' motion to dismiss plaintiff's Title VII claims must be granted.

### D. Plaintiff's ADA Claims

■ Plaintiff's federal Complaint also alleges violations under the ADA based on plaintiff's association with persons with HIV/AIDS, and as a person living with HIV/AIDS. *See* Compl. at ¶¶ 24–45.[7]

---

sponding to the 1997 DHR Complaint. Plaintiff does not contend, nor does the record reflect, that the right to sue letter applied to both the 1993 an 1997 DHR Complaints.

6. This applies to allegations under Title VII in both the 1993 and 1997 DHR Complaints.

7. SIF is a state agency for purposes of Eleventh Amendment immunity. *See Lipofsky v. Steingut*, 86 F.3d 15, 16–17 (2d Cir.) (per curiam), *cert. denied*, —— U.S. ——, 117 S.Ct. 401, 136 L.Ed.2d 316 (1996). In the present

case, however, the parties do not address the Eleventh Amendment with respect to plaintiff's ADA claims. While the Supreme Court has held that a court *need not* address the issue of Eleventh Amendment immunity *sua sponte*, see *Wisconsin Dep't of Corrections v. Schacht*, 524 U.S. 381, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998) (citing *Patsy v. Board of Regents of the State of Florida*, 457 U.S. 496, 515 n. 19, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) ("[B]ecause of the importance of state law in analyzing Eleventh Amendment ques-

The enforcement provisions of Title VII of the Civil Rights Act of 1964, as amended, are applicable to actions brought under the ADA against employers. *See* 42 U.S.C. § 12117(a); *Rosquist v. New York Univ. Med. Ctr.*, 1998 WL 702295, at *5 (S.D.N.Y. Oct.7, 1998); *McNight v. The Dormitory Auth. of the State of New York*, 995 F.Supp. 70, 81 (N.D.N.Y.1998); *Lacoparra v. Pergament Home Centers, Inc.*, 982 F.Supp. 213, 225 (S.D.N.Y.1997) *Spurlock v. NYNEX*, 949 F.Supp. 1022, 1029 (W.D.N.Y.1996) *Lillien .v. M.A.B.S.T.O.A. (MTA)*, 1996 WL 711495, at *2 (S.D.N.Y. Dec.11, 1996). Accordingly, because plaintiff filed a complaint with the DHR, he must file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory action, see 42 U.S.C. § 2000e–5(e)(1); 42 U.S.C. § 12117(a), and must file suit in federal court within 90 days of receiving his right to sue letter. *See* 42 U.S.C. § 2000e–5(f).

■ Here, plaintiff's failure to secure a right to sue letter with respect to his 1993 DHR Complaint similarly bars him from asserting a claim under the ADA in his federal Complaint based upon those allegations contained in the 1993 DHR Complaint. To the extent that allegations in the 1993 DHR Complaint are realleged in the 1997 DHR Complaint, those allegations may not form the basis of an ADA claim because they are time-barred. *See*

tions and because the State may, under certain circumstances, waive this defense, we have never held that it is jurisdictional in the sense that it must be raised and decided by this Court on its own motion.")), the Second Circuit, and other circuit courts, have raised the issue of Eleventh Amendment immunity *sua sponte*. *See Atlantic Healthcare Benefits Trust v. Googins*, 2 F.3d 1, 4 (2d Cir.1993), *cert. denied*, 510 U.S. 1043, 114 S.Ct. 689, 126 L.Ed.2d 656 (1994); *Alliance of Am. Insurers v. Cuomo*, 854 F.2d 591, 604 (2d Cir.1988); *Jehnsen v. New York State Martin Luther King, Jr. Inst. for Nonviolence*, 13 F.Supp.2d 306, 309 (N.D.N.Y.1998) (Kahn, J.); *Mete v. New York State Office of Mental Retardation and Developmental Disabilities*, 984 F.Supp. 125, 128 (N.D.N.Y.1997) (McCurn, S.J.), *aff'd*, 162 F.3d 770 (1998); *Muller v. Costello*, 1996 WL 191977, at *2–3 (N.D.N.Y. Apr.16, 1996) (Scullin, J.); *Tassone v. County of Onondaga, New York*, 1996 WL 77429, at * 4 (N.D.N.Y. Feb.15, 1996) (Pooler, J.); *see also V–1 Oil Co. v. Utah State Dep't of Pub. Safety*, 131 F.3d 1415, 1420 (10th Cir.1997); *Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 227 (4th Cir. 1997); *Wilson-Jones v. Caviness*, 99 F.3d 203, 206 (6th Cir.1996), *modified on other grounds*, 107 F.3d 358 (6th Cir.1997); *Estate of Leroy Porter v. State of Illinois*, 36 F.3d 684, 691 n. 3 (7th Cir.1994); *The Sindia Expedition, Inc. v. The Wrecked and Abandoned Vessel, known as "The Sindia,"* 895 F.2d 116, 118 (3d Cir. 1990); *Figueroa–Rodriguez v. Aquino*, 863 F.2d 1037, 1043 (1st Cir.1988); *Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc.*, 810 F.2d 869, 873 n. 2 (9th Cir.1987); *Morris v. Washington Metro. Area Transit Auth.*, 702 F.2d 1037, 1040 (D.C.Cir.1983); *Whiting v. Jackson State Univ.*, 616 F.2d 116, 127 n. 8 (5th Cir.1980).

The ADA specifically states that a state shall not be immune under the Eleventh Amendment from suit brought in federal court under the ADA. *See* 42 U.S.C. § 12202. This Court agrees with the majority of the courts that have visited this issue and have held that the ADA provision abrogating states' sovereign immunity under the Eleventh Amendment is valid. *See Burns–Vidlak v. Chandler*, 165 F.3d 1257, 1261 n. 6 (9th Cir.1999) (citing *Clark v. State of California*, 123 F.3d 1267, 1270 (9th Cir.1997), *cert. denied sub nom.*, *Wilson v. Armstrong*, —— U.S. ——, 118 S.Ct. 2340, 141 L.Ed.2d 711 (1998)); *Kimel v. State of Florida Bd. of Regents*, 139 F.3d 1426, 1433 (11th Cir.1998), *cert. granted*, —— U.S. ——, 119 S.Ct. 901, 142 L.Ed.2d 901 (1999); *Coolbaugh v. State of Louisiana*, 136 F.3d 430, 438 (5th Cir.), *cert. denied*, —— U.S. ——, 119 S.Ct. 58, 142 L.Ed.2d 45 (1998); *Crawford v. Indiana Dep't of Corrections*, 115 F.3d 481, 487 (7th Cir.1997) (Posner, C.J.); *Anderson v. Department of Pub. Welfare*, 1 F.Supp.2d 456, 468 (E.D.Pa.1998); *Muller v. Costello*, 997 F.Supp. 299, 304 (N.D.N.Y.1998) (Scullin, J.); *Martin v. State of Kansas*, 978 F.Supp. 992, 997–98 (D.Kan.1997); *Bartlett v. New York State Bd. of Law Examiners*, 970 F.Supp. 1094, 1131 (S.D.N.Y.1997) (noting that the ADA "explicitly strips the states of their Eleventh Amendment immunity."), *rev'd, in part, on other grounds*, 156 F.3d 321 (2d Cir.1998); *Williams v. Ohio Dep't of Mental Health*, 960 F.Supp. 1276, 1282 (S.D.Ohio 1997). *But see Brown v. North Carolina Div. of Motor Vehicles*, 166 F.3d 698, 705 (4th Cir.1999) (Murnaghan, J., dissenting); *Kilcullen v. New York State Dep't of Transp.*, 33 F.Supp.2d 133, 138 (N.D.N.Y.1999)· (Kahn, J.); *Nihiser v. Ohio Envtl. Protection Agency*, 979 F.Supp. 1168, 1176 (S.D.Ohio 1997).

42 U.S.C. § 2000e–5(e)(1); 42 U.S.C. § 12117(a).

■ Plaintiff filed his 1997 DHR Complaint on February 12, 1997. Any claim under the ADA must be brought within 300 days of the alleged discriminatory act(s) otherwise it is time-barred and may not be the basis for relief in federal district court. *See Nweke v. The Prudential Ins. Co. of Am.*, 25 F.Supp.2d 203, 216 (S.D.N.Y.1998). Thus, in the absence of factors that would warrant tolling or otherwise extending the filing period, any alleged discriminatory events which oc-

curred outside the 300–day period are time-barred.[8] *See Talyansky v. Mercury Print Prods.*, 25 F.Supp.2d 151, 153 (W.D.N.Y.1998); *Demers v. Niagara Mohawk Power Corp.*, 1996 WL 293162, at *2 (N.D.N.Y. May 24, 1996). Accordingly, the Court will only consider those allegations contained in plaintiff's federal Complaint relating to events occurring on or after April 1996.[9] These events include, inter alia,: (1) denial of provisional promotions when similarly situated auditors held their posts for extended periods and (2) not considering plaintiff for permanent promotions on at least thirteen occasions

**8.** Plaintiff does not argue, and the allegations in the EEOC and federal Complaint do not sufficiently establish an ongoing discriminatory practice or policy sufficient to toll the limitations period by invoking the continuing violation doctrine. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir.1998) (citing *Lambert v. Genesee Hosp.*, 10 F.3d 46, 52 (2d Cir.1993), *cert. denied*, 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994); *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir.1994)); *Lloyd v. WABC–TV*, 879 F.Supp. 394, 399 (S.D.N.Y.1995). This circuit has limited the applicability of the doctrine to instances involving a specific official policy or mechanism. *See Cook v. Pan Am. World Airways, Inc.*, 771 F.2d 635 (2d Cir.1985) (discriminatory seniority list), *cert. denied*, 474 U.S. 1109, 106 S.Ct. 895, 88 L.Ed.2d 929 (1986); *Association Against Discrimination in Employment, Inc. v. City of Bridgeport*, 647 F.2d 256 (2d Cir.1981) (discriminatory fire department tests), *cert. denied*, 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982).

**9.** As an initial matter, the Court notes that allegations of events occurring prior to the July 26, 1992 effective date of the ADA are not given retroactive treatment under the ADA. *See Smith v. United Parcel Serv. of Am., Inc.*, 65 F.3d 266, 266 (2d Cir.1995); *O'Bryant v. City of Midland*, 9 F.3d 421, 422 (5th Cir. 1993).

While the 1997 DHR Complaint contains dates of the alleged discriminatory acts, the federal Complaint lacks, in large part, such detail. Thus, the Court reviewed the allegations in the federal Complaint in conjunction with the 1993 and 1997 DHR Complaints, which contain specific dates, to determine which events listed in the federal Complaint are time-barred. These include the following allegation(s) in the federal Complaint: (1) ¶¶ 11–15, 16 (in part), 17–18, 21, and 50 (clearly dated pre-April 1996); (2) ¶¶ 27, 29

(improper accounting of attendance records in October 1990, see 1997 DHR Complaint at ¶ 12); (3) ¶¶ 26, 28, 30 (questioning regarding plaintiff's physical condition, sick time and possible HIV/AIDS status during 1990–1993, see 1993 DHR Complaint at ¶¶ 3, 6–7; 1997 DHR Complaint at ¶¶ 11, 14, 19; Defs. Notice of Motion to Dismiss, Ex. B, at 5); (4) ¶ 33 (spreading of rumors around July 1992 regarding plaintiff's health, see 1993 DHR Complaint at ¶ 5); (5) ¶¶ 32 (not raised in either the 1993 or 1997 DHR Complaints); (6) ¶ 35 (disparaging information in plaintiff's personnel file in October 1989, see 1997 DHR Complaint at ¶ 9); (7) ¶ 36 (withholding paycheck in 1992, see 1997 DHR Complaint at ¶ 21); (8) ¶ 37 (denial of voluntary work reduction in 1989, see 1997 DHR Complaint at ¶ 10); (9) ¶¶ 39–40 (rated by provisional supervisors who competed with plaintiff for permanent promotion positions from 1991 to 1994, see 1997 DHR Complaint at ¶ 17); (10) ¶ 41 (corrective action plan as part of April 1992 evaluation, see 1997 DHR Complaint at ¶ 23); (11) ¶ 43 (alleged inaction by Affirmative Action office during 1992 and 1993, see 1997 DHR Complaint at 24); (12) ¶ 49 (unpaid overtime during 1992, see 1997 DHR Complaint at ¶ 22); (13) ¶ 51 (complaints reported in 1989 not kept confidential, see 1997 DHR Complaint at ¶ 8); and (14) ¶ 52 (in part) (threats of retaliation and discipline for reporting alleged discriminatory acts pre-dating April 1996, see 1997 DHR Complaint at ¶¶ 8, 25 (in part)). To the extent that an allegation in the federal Complaint is undated and is "reasonably related" to timely allegations in the 1997 DHR Complaint and specific incidents of discrimination raised in plaintiff's administrative complaint, the Court treated those allegations as timely. *See Butts v. New York Dep't of Housing, Preservation & Dev.*, 990 F.2d 1397, 1401 (2d Cir.1993).

although he was highly qualified and scored fourth on a competitive examination used for determining promotions. *See* Compl. at ¶¶ 16, 20, 38, 42, 52–53. Plaintiff alleges that these events were based on "the perception that [he] belonged to a group associated with high risk behaviors for HIV/AIDS," *id.* at ¶¶ 19–20, and were motivated, in part, by plaintiff's efforts to report defendants' alleged discriminatory practices. *See id.* at ¶¶ 16, 20, 38, 52–53.

Applying a liberal reading to plaintiff's pro se federal Complaint, see *Spencer v. Doe,* 139 F.3d 107, 112 (2d Cir.1998); *Branham v. Meachum,* 77 F.3d 626, 629 (2d Cir.1996), the Court finds that the federal Complaint alleges discrimination under the ADA based on: (1) plaintiff being regarded as a person with HIV/AIDS, see 42 U.S.C. § 12112(a); (2) plaintiff's association with persons known to have HIV/AIDS, see 42 U.S.C. § 12112(b)(4); and (3) defendants' retaliation against plaintiff for reporting alleged acts of discrimination to the DHR, see 42 U.S.C. § 12203(a).

### 1. Discrimination in Advancement and Other Terms, Conditions and Privileges of Employment

The ADA, which governs employment relationships, provides, in relevant part, that:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a)

To establish a prima facie case of discrimination relating to advancement and other terms, conditions and privileges of employment, plaintiff must establish that: (1) the employer is subject to the statute under which the claim is brought; (2) plaintiff is an individual with a disability within the meaning of the statute in question; (3) plaintiff could perform the essential functions of the job, with or without reasonable accommodation; and (4) the adverse employment actions occurred because of plaintiff's disability. *See Reeves v. Johnson Controls World Servs., Inc.,* 140 F.3d 144, 149 (2d Cir.1998); *Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 869–70 (2d Cir.1998); *Lyons v. Legal Aid Society,* 68 F.3d 1512, 1515 (2d Cir.1995). A plaintiff alleging employment discrimination under the ADA bears the initial burden of establishing a prima facie case. *See Wernick v. Federal Reserve Bank of N.Y.,* 91 F.3d 379, 383 (2d Cir.1996). For purposes of this motion, defendants do not dispute that they are subject to the ADA or that plaintiff was able to perform the essential functions of his job. *See* Defts. Mem. of Law at 18 ("SIF regarded plaintiff as able to perform his job and simply required that plaintiff attend work or account for his absences.").

"Disability" is defined under the ADA to include: (a) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (b) a record of such impairment; or (c) being regarded as having such an impairment. *See* 42 U.S.C. § 12102(2); *Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 641 (2d Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1253, 142 L.Ed.2d 350 (1999); *Francis v. City of Meriden,* 129 F.3d 281, 283 (2d Cir.1997). Both the 1997 DHR Complaint and federal Complaint argue under the third definition—that defendants regarded plaintiff as a person living with HIV/AIDS. *See* Compl. at ¶ 19–20.

To establish a disability under the "regarded as" prong, an employee must show that he is "regarded as" having an impairment that substantially limits one or more major life activities. *See* 29 C.F.R. § 1630.2(1). In *City of Meriden,* the Second Circuit held that whether an individual is "regarded as" having a disability "turns on the employer's perception of the em-

ployee" and is therefore "a question of intent, not whether the employee has a disability." 129 F.3d at 284. "It is not enough, however, that the employer regarded that individual as somehow disabled; rather, the plaintiff must show that the employer regarded the individual as disabled within the meaning of the ADA." *Colwell,* 158 F.3d at 646. As the Second Circuit stated in *City of Meriden:*

> A plaintiff cannot state a claim under the "regarded as" prong of the ADA ... simply by alleging that the employer believes some physical condition ... renders the plaintiff disabled. Rather, the plaintiff must allege that the employer believed, however erroneously, that the plaintiff suffered from an "impairment" that, if it truly existed, would be covered under the statutes and that the employer discriminated against the plaintiff on that basis.

129 F.3d at 285 (citing *Andrews v. State of Ohio,* 104 F.3d 803, 810 (6th Cir.1997)); *see also Daley v. Koch,* 892 F.2d 212, 215–16 (noting that the issue is whether defendant knew of plaintiff's condition, and, if so, whether he believed that it substantially affected plaintiff's ability in a major life activity.).

The regulations elaborate on this definition by way of example:

> An individual satisfies the ... "regarded as" definition of "disability" if the employer ... erroneously believes the individual has a substantially limiting impairment that the individual actually does not have. This situation could occur, for example, if an employer [took adverse employment action against] an employee in response to a rumor that the employee is infected with ... HIV. Even though the rumor is totally un-

founded and the individual has no impairment at all, the individual is considered an individual with a disability because the employer perceived of this individual as being disabled. Thus, ... the employer, by [taking adverse employment action against] this employee, is discriminating on the basis of disability.

29 C.F.R.App. § 1630.2(1).

Accordingly, an individual who can show that an employer made an employment decision because of a perception of disability based on "myth, fear or stereotype," will satisfy the "regarded as" part of the definition of disability.[10] *Id.* (citing *School Bd. of Nassau County, Florida v. Arline,* 480 U.S. 273, 282, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987) (noting that while a physical impairment "might not diminish a person's physical or mental capabilities, [it] could nevertheless substantially limit that person's ability to work as a result of the negative reactions of others to the impairment.")).

Plaintiff's allegations are sufficient to establish that defendants' were aware of plaintiff's HIV/AIDS status based on the numerous complaints made by plaintiff to SIF and to the DHR and EEOC. Viewing the Complaint in a light most favorable to plaintiff and accepting the allegations as true, as the Court must do in a motion to dismiss pursuant to FED.R.CIV.P. 12(b)(6), plaintiff's allegations that defendants repeatedly denied him provisional or permanent promotions in place of less qualified candidates because of his perceived HIV/AIDS status are sufficient to satisfy the "regarded as" definition of a disability and establish a prima facie case of discrimination under 42 U.S.C. § 12112(a).[11]

---

10. The regulations note that "common attitudinal barriers" that result in employers treatment of individuals with disabilities include concerns regarding: "productivity, safety, insurance, liability, attendance, cost of accommodation and accessibility, workers' compensation costs, and acceptance by co-workers and customers." 29 C.F.R.App. § 1630.2(*l*).

11. The Court also notes that HIV/AIDS has been held to satisfy the first definition of a disability under the ADA because it substantially limits the major life activity of reproduction. *See Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 2204–09, 141 L.Ed.2d 540 (1998); *Doe v. Dekalb County Sch. Dist.,* 145 F.3d 1441, 1445 n. 5 (11th Cir.1998).

### 2. "Association Discrimination" Provision Under the ADA

Plaintiff also claims that defendants discriminated against him because of his association with persons living with HIV/AIDS. *See* Compl. at ¶¶ 19–20, 25.

The term "discriminate," as used under the ADA, is defined to include "associational discrimination," which includes:

> excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association.

42 U.S.C. § 12112(b)(4) (West 1995).

■ To establish a prima facie case of "association discrimination" under the ADA, 42 U.S.C. § 12112(b)(4), a plaintiff must demonstrate the following: "(1) the plaintiff was 'qualified' for the job at the time of the adverse employment action; (2) the plaintiff was subjected to adverse employment action; (3) the plaintiff was known by his employer at the time to have a relative or associate with a disability; and (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision." [12] *Den Hartog v. Wasatch Academy*, 129 F.3d 1076, 1085 (10th Cir.1997); *see also Morgenthal v. American Tel. & Tel. Co., Inc.*, 1999 WL 187055, at * 2 (S.D.N.Y. Apr.6, 1999) (noting that the regulations implementing the ADA state that " 'this provision is intended to protect any qualified individual, whether or not that individual has a disability.' ") (quoting 29 C.F.R. § 1630.8); *Lester v. Compass Bank*, 1997 WL 151782, at * 3 (N.D.Ala. Feb.10, 1997); *Saladin v. Turner*, 936 F.Supp. 1571, 1580–81 (N.D.Okla.1996). If the plaintiff in an ADA "association discrimination" establishes these elements, the burden shifts

to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See Den Hartog*, 129 F.3d at 1085 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)); *Saladin*, 936 F.Supp. at 1581. Once such a reason is articulated, the burden shifts back to the plaintiff to prove that the employer's stated reason is pretextual and that the employer intentionally discriminated against plaintiff. *See Den Hartog*, 129 F.3d at 1085 (citing *McDonnell Douglas Corp.*, 411 U.S. at 804, 93 S.Ct. 1817); *Saladin*, 936 F.Supp. at 1581.

The regulations state that the association provision of the ADA covers "family, business, social or other relationship or association" between the qualified individual, here, the plaintiff, and an individual with a known disability. *See* 29 C.F.R. § 1630.8. Thus, this provision "is not limited to those who have a familial relationship with an individual with a disability." 29 C.F.R.App. § 1630.8. As the Tenth Circuit noted in *Den Hartog*, this provision was intended to cover situations where an qualified individual was discriminated against because the employer assumes, without foundation, that the employee's association with a person with a disability, such as HIV/AIDS, will require the employee to have to miss work or frequently leave work early or both, in order to care for the disabled person. *See Den Hartog*, 129 F.3d at 1082 (citations omitted); *see also Rogers v. International Marine Terminals, Inc.*, 87 F.3d 755, 760 (5th Cir.1996); *Tyndall v. National Educ. Ctrs.*, 31 F.3d 209, 214 (4th Cir.1994); *Braverman v. Penobscot Shoe Co.*, 859 F.Supp. 596, 604 (D.Me.1994) ("[Section] 12112(b)(4) was intended to apply, for example, to ... an employer's discharge of an employee who volunteered at an AIDS clinic due to the employer's fear of contracting AIDS."). This provision was not, however, intended

---

**12.** Defendants acknowledge that plaintiff was qualified for his current position. *See* Defts. Mem. of Law at 17–18.

to cover employees who violate a "neutral employer policy concerning attendance or tardiness." *Id.* (noting that the ADA only requires that "job applicants or employees, but not their relatives or associates, need be reasonably accommodated") (citations omitted).

 Plaintiff alleges that he was isolated by his co-workers and employer and consistently denied promotions in place of less qualified employees based on his association with a person living with HIV/AIDS. In response, defendants assert that they regarded plaintiff as able to perform in his position and "simply required that plaintiff attend work or account for his absences" and point to plaintiff's current employment at SIF to rebut plaintiff's allegations of workplace discrimination. Defts. Mem. of Law at 18. Significantly, defendants do not dispute that they regarded plaintiff as living with HIV/AIDS or as having an association or relationship with persons known to have HIV/AIDS. *See id.*

Reading plaintiff's pro se Complaint in a liberal manner, and viewing the allegations in the Complaint in a light most favorable to the plaintiff, as required at this preliminary stage of the litigation, plaintiff has sufficiently alleged a causal connection between defendants' awareness of his association with persons with HIV/AIDS and adverse employment action, which included denials of both provisional and permanent promotions in favor of less qualified or similarly situated employees, based on that association. *See* Compl. at ¶¶ 16, 20, 38, 42, 52–53.

### 3. Retaliation Claim

Plaintiff last claims that defendants retaliated against him for reporting discriminatory acts within SIF and to the DHR and EEOC by denying him a provisional or permanent promotion. *See* Compl. at ¶¶ 16, 20, 52–53.

The retaliation provision under the ADA states:

No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a) (1994).

 To establish a prima facie case of retaliation under the ADA, a plaintiff must prove that " '(1) he engaged in a protected activity; (2) his employer took an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action.' " *Eckles v. Consolidated Rail Corp.,* 890 F.Supp. 1391, 1416 (S.D.Ind.1995) (quoting *Harmer v. Virginia Elec. and Power Co.,* 831 F.Supp. 1300, 1308 (E.D.Va.1993)), *aff'd,* 94 F.3d 1041 (7th Cir.1996), *cert. denied,* 520 U.S. 1146, 117 S.Ct. 1318, 137 L.Ed.2d 480 (1997); *see also Saladin,* 936 F.Supp. at 1580. As with other discrimination claims, once the plaintiff has established a prima facie case of retaliation, the employer has the burden of articulating a legitimate, nondiscriminatory reason for its adverse action. *See Pomilio v. Wachtell, Lipton, Rosen & Katz,* 1999 WL 9843, at *7 (S.D.N.Y. Jan.11, 1999) (noting that "[u]nder some circumstances, such a pursuit of internal remedies constitutes a protected activity."); *Klem v. Popular Ford Sales, Inc.,* 975 F.Supp. 196, 203 (E.D.N.Y.1997). If the employer does so, the plaintiff may then present evidence that the reason given by the employer is a mere pretext for the real, discriminatory reason for the adverse action. *See Pomilio,* 1999 WL 9843, at *7; *Klem,* 975 F.Supp. at 203.

 Plaintiff's internal reporting of defendants' alleged discrimination and subsequent filing of a complaint with both the DHR and EEOC clearly fall within the purview of protected activity. *See Talanda v. KFC Nat'l Management Co.,* 140 F.3d 1090, 1096 (7th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 164, 142 L.Ed.2d 134 (1998); *Kotcher v. Rosa and Sullivan Ap-*

*pliance Ctr., Inc.,* 957 F.2d 59, 64 (2d Cir.1992); *Pomilio,* 1999 WL 9843, at *8; *Klem,* 975 F.Supp. at 203. Further, plaintiff's allegations that he was denied provisional or permanent promotions satisfy the second element of a retaliation claim—"'that he suffered a materially adverse change in the terms and conditions of employment.'" *Pomilio,* 1999 WL 9843, at *8 (quoting *Torres v. Pisano,* 116 F.3d 625, 640 (2d Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 563, 139 L.Ed.2d 404 (1997)); *see also Connell v. Bank of Boston,* 924 F.2d 1169, 1179 (1st Cir.) ("Most cases involving a retaliation claim are based on an employment action which has an adverse impact on the employee, i.e., discharge, demotion, or failure to promote."), *cert. denied,* 501 U.S. 1218, 111 S.Ct. 2828, 115 L.Ed.2d 997 (1991); *Simmerman v. Hardee's Food Sys., Inc.,* 1996 WL 131948, at * 14 (E.D.Pa. Mar.22, 1996) ("Although there is no exhaustive list of what constitutes adverse employment action, examples include demotion, additional responsibilities, termination, denial of a deserved promotion, pay decrease, or loss of benefits."), *aff'd,* 118 F.3d 1578 (1997); *Penny v. Winthrop–Univ. Hosp.,* 883 F.Supp. 839, 845 (E.D.N.Y.1995).

Reading plaintiff's pro se Complaint in a liberal manner, and viewing the allegations in the Complaint in a light most favorable to the plaintiff, as required at this preliminary stage of the litigation, plaintiff has sufficiently alleged a causal connection between plaintiff's reporting defendants' alleged discriminatory acts to his superiors and the DHR and EEOC and adverse employment action, which included denials of both provisional and permanent promotions in favor of less qualified or similarly situated employees. *See* Compl. at ¶¶ 16, 20, 38, 42, 52–53.

### III. CONCLUSION:

For all of the foregoing reasons, then, it is hereby **ORDERED,**

that Defendants' motion to dismiss the Complaint is granted in part, and denied in part. Defendants' motion to dismiss plaintiff's Title VII claims is hereby GRANTED; defendants' motion to dismiss plaintiff's ADA claims is hereby DENIED.

**IT IS SO ORDERED.**